**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,                    ) Case No. 25 CR 321-3
                                             )
            Plaintiff,                       )
                                             )
            vs.                              )
                                             ) Chicago, Illinois
MAHMOOD SAMI KHAN, also known as Sami,       ) July 1, 2025
                                             ) 1:59 P.M.
            Defendant.                       )

     TRANSCRIPT OF PROCEEDINGS - Arraignment and Detention
   BEFORE THE HONORABLE DANIEL P. McLAUGHLIN, Magistrate Judge

APPEARANCES:

For the Government:          HON. ANDREW S. BOUTROS
                             219 South Dearborn Street
                             Chicago, Illinois  60604
                             BY:  MS. SHERI MECKLENBURG
                                  MS. KELLY LYNN GUZMAN
                                  MS. CLAIRE SOBCZAK

For the Defendant:           MS. GABRIELLE ROSE SANSONETTI
                             120 North LaSalle Street
                             Suite 2000
                             Chicago, Illinois  60602

ALSO PRESENT:                Ms. Danaysy Diaz
                             Pretrial Service Officer


                   PAMELA S. WARREN, CSR, RPR
                Official Court Reporter - Retired
                   23869 N. High Ridge Drive
                Lake Zurich, Illinois   60047
                      312.823.0001

NOTE:  Please notify of correct speaker identification.

(Proceedings held in open court:)

THE CLERK:  25 CR 321, United States versus Mahmood Sami Khan.

THE COURT:  Good afternoon.

MS. MECKLENBURG:  Good afternoon, your Honor.  Sheri Mecklenburg on behalf of the United States.

And with me today is -- are my partners Kelly Guzman and Claire Sobczak.

THE COURT:  Nice to see you all.  Thanks for being here.

MS. SANSONETTI:  Good morning -- good afternoon, your Honor.  Gabrielle Sansonetti, S-A-N-S-O-N-E-T-T-I, on behalf of Mr. Khan, who is present before your Honor.

And also with him is his mother, two sisters, and his wife.

THE COURT:  Okay.  Good afternoon to all of you.

Good afternoon, Mr. Khan.

Folks, you can have a seat in the back if you would like.  Thank you.

Okay.  So we are here for arraignment.  I know that there is also some dispute about the conditions of release.  We can take that up after we complete the arraignment.

Then I also saw that the government filed a motion for a protective order.  But I think we could probably take that up tomorrow because the one person who hadn't weighed in yet --

looks like --

MS. MECKLENBURG:  That's changed.

THE COURT:  Okay.

MS. MECKLENBURG:  I heard from him this morning that he has weighed in and he agrees.

THE COURT:  Okay.

MS. MECKLENBURG:  There is no objection I should say.

THE COURT:  Got it.  Got it.

MS. MECKLENBURG:  So -- yeah.

THE COURT:  Okay.  Well, that will be the easiest of the three things.  So we'll just --

MS. MECKLENBURG:  Yes.

THE COURT:  I'll take care of that after the hearing today.

In terms of the arraignment, my view of it is that Mr. Khan had his initial appearance down in the Southern District of Texas.  So really all we need to do here is an arraignment.

Is that correct?  Do you agree, Ms. Sansonetti?

MS. SANSONETTI:  That's correct, your Honor.

THE COURT:  Okay.  Great.  So have you received a copy of the indictment?

MS. SANSONETTI:  We have, your Honor.  Mr. Khan and I have both received a copy of it.  I have reviewed it with him.

I don't know if you want the government to go through

the statutory maximums, but we have reviewed it and he would waive a formal reading.

THE COURT: Great. I think -- you know, I don't think I'm going to do the full initial appearance, but I would like for the government to briefly summarize the counts in the indictment that are pending against Mr. Khan and what the maximum possible penalties would be if he is convicted.

MS. MECKLENBURG: Yes, your Honor.

THE COURT: Thank you.

MS. MECKLENBURG: Mr. Khan is charged in the indictment with four counts of wire fraud, Count Seven, Eight, Eleven, and Thirteen. And each of those counts carries a maximum sentence of imprisonment of up to 20 years with -- followed by supervised release of up to three years, and a financial penalty of up to $250,000 or twice the gross loss or gain, whichever is greater. And in this case the gross loss or gain is approximately $293 million.

In addition, Mr. Khan is charged in Count Nineteen of the indictment with a money laundering conspiracy under Section 18, United States Code, Section 1956(h).

And he is charged -- and that charge carries a maximum penalty of imprisonment of up to 20 years, followed by supervised release of up to three years, and a financial penalty of up to $500,000 or twice the value, the monetary instruments involved, which here were approximately

$12,900,000, for a total maximum sentence of 100 years and a total financial penalty of approximately $605 million.

THE COURT: Okay. Mr. Khan, did you hear what the prosecutor said?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Did you understand the maximum possible penalties that you could face if you are convicted in this matter?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. So Ms. Sansonetti, on behalf of Mr. Khan, I know you have waived formal reading. Do you enter a plea?

MS. SANSONETTI: Yes, your Honor. He pleads not guilty.

THE COURT: Okay. So a plea of not guilty will be entered on Mr. Khan's behalf to the five counts that are pending against him.

Correct me if I am wrong, those are Counts Seven, Eight, Eleven, Thirteen, and Nineteen; is that correct?

MS. MECKLENBURG: Yes, your Honor. Yes, your Honor.

THE COURT: Okay. Great.

We had a schedule from Judge Coleman, which I neglected to bring out here with me. But I know Ms. Foster will have it for me.

THE CLERK: Rule 16.1(a) conference by July 8.

Status hearing Wednesday, August 6 at 9:45 A.M.

THE COURT: Okay. So anything else from either party on the arraignment? I know we need to talk about conditions of release.

MS. MECKLENBURG: Just that, your Honor, I just wanted to say that I spoke with my paralegal. There is a lot of discovery here.

THE COURT: Okay.

MS. MECKLENBURG: And I -- the paralegal expects to start producing it within two weeks. It goes to a contractor, comes back to us. Not the most efficient system, but I didn't come up with it.

In any event, so we should start doing that. And we're asking each of the parties to drop off with us a hard drive, and we will fill it up.

THE COURT: Okay.

MS. MECKLENBURG: Reach out to them.

THE COURT: Any issue with that, Ms. Sansonetti?

MS. SANSONETTI: No.

THE COURT: Okay. Great. So that's understood.

And my guess is that Judge Coleman is going to understand that this is a case that involves voluminous discovery, so it will be a little bit of a different shot clock.

Okay. So conditions of release.

And pretrial services is here. I'm sorry, I should have let you speak at the beginning.

MS. DIAZ: Good afternoon, your Honor. Danaysy Diaz from pretrial services.

THE COURT: Nice to see you, Officer Diaz. Thank you for being here.

MS. DIAZ: Yes.

THE COURT: Okay. So have you all had an opportunity to read Officer Diaz's report?

MS. MECKLENBURG: Yes, your Honor.

MS. SANSONETTI: Yes, your Honor.

THE COURT: Okay. And so, you know, obviously her recommended conditions differ significantly from the conditions that were put in place down in the Southern District of Texas. I know there is dispute between the parties about what the conditions of release are to be.

My view of it is that I -- my plan was just to enter a new order setting conditions of release, even before I knew that you guys had a disagreement. So I think we can just essentially start from scratch.

You know, I don't have any issue, from my perspective, with anything that Officer Diaz recommended. And then I -- I think there are some additional conditions that may be appropriate.

But I have reviewed your filings, and to me I think I

understand where most of the friction points are. I guess one bucket is contact, direct or indirect, with folks -- you know, the list of folks from the Southern District of Texas is pretty long, right? And so there is that. And there is the contact issue.

And then there is the --

MS. MECKLENBURG: Just so, your Honor, as you know, not all those people reside in the Southern District of Texas.

THE COURT: Right. But those are all people --

MS. MECKLENBURG: Yes.

THE COURT: -- that he's not permitted to have contact with --

MS. MECKLENBURG: That's right.

THE COURT: -- under the rules in Texas.

MS. MECKLENBURG: Yes.

THE COURT: Okay. And then the other issue is sort of the financial records and financial transparency, for lack of a better label. And then I -- you don't like that label?

MS. SANSONETTI: No. That label is fine. I -- I will let you finish and then if I could --

THE COURT: Okay. And then the third thing, at least in my mind, the third thing is the job and what he can do for work.

MS. SANSONETTI: Just so --

MS. MECKLENBURG: Judge, yeah --

MS. SANSONETTI: Sorry.

MS. MECKLENBURG: Ms. Sansonetti reached out to me yesterday and told me that I had misunderstood her, that she is -- that the defendant is willing to quit his job.

THE COURT: Okay.

MS. MECKLENBURG: So if I misunderstood, that was on me.

MS. SANSONETTI: And Judge, I think on two points that might make your job a little easier. One is that there isn't a dispute with direct contact with any of the individuals that were named in that list. There is no problem with direct contact.

My concern was indirect contact. My (unintelligible) attorney communications. And I was just wanting to, for the record, make clear that indirect contact didn't include the attorneys.

Sounded like from the government's response that they are in agreement with that. So just in terms of, you know, language and the conditions of bond, I just want to make sure that Mr. Khan doesn't get roped up or we're not limited in some way that we didn't understand exactly the restrictions.

THE COURT: Okay. So counsel can certainly talk to counsel for the other folks.

MS. SANSONETTI: Yes, that's -- that is what we wanted to preserve.

THE COURT: Is that what you're asking to clarify?

MS. SANSONETTI: Correct. Yes.

THE COURT: Okay. You don't have any issue with that, do you?

MS. MECKLENBURG: Never.

THE COURT: Okay. Great.

MS. SANSONETTI: So that --

THE COURT: That one is off the board.

MS. SANSONETTI: That one is off the board.

THE COURT: Okay.

MS. SANSONETTI: So -- and then the second one was the employment. Mr. Khan is not going to be employed by Mr. -- by Anosh, Inc. any longer, so that's also off the table.

THE COURT: Great.

MS. SANSONETTI: So the things that I think are remaining are the electronic monitoring that he's currently on.

THE COURT: Uh-huh.

MS. SANSONETTI: I'm asking that that be removed.

The financial records.

And then we just wanted to add that he is permitted to travel -- and this actually wasn't in my motion, I just -- we just realized it as I was speaking with the family.

A significant number of his in-laws reside in the Eastern and Northern District of Texas. So we would just ask that the conditions be expanded to just include the Eastern and

Northern District of Texas, as well as the Southern District.

THE COURT: Okay. So the only part of Texas he won't be able to go to is the Western District of Texas?

MS. SANSONETTI: For and -- or so it would just be -- right.

THE COURT: Yes.

MS. SANSONETTI: And then -- anyplace else in the United States besides the Northern District --

THE COURT: Right.

MS. SANSONETTI: -- of Illinois.

THE COURT: Okay. All right. So I guess let me tell you where I'm coming from on this. And so, you know, I took a look at Officer Diaz's report. My view is his -- Mr. Khan has known about this investigation for some time. You know and I know that you have a different view of his level of cooperation with the government, and I -- I'm not going to weigh in on that. But he's certainly known about it for some time.

I did read with interest in your filing, Ms. Mecklenburg, that there was, you know, a private jet and this and that much. But my understanding is that he was not on that jet.

MS. MECKLENBURG: That's true.

THE COURT: And wasn't involved.

MS. MECKLENBURG: That's accurate.

THE COURT: Okay. He's here today. He's come up here

today. He has been compliant over the last few weeks, which isn't a particularly long timetable, but it is at least a small sample size.

But for me where it breaks down is, you know, he has known about this for a long time. He has certainly known the risk of prosecution and he hasn't fled. He has stayed here. He has significant ties in Texas with family and folks who are here to support him today.

So I don't see electronic monitoring as being necessary in this case. I'm agreeable to the geographic restrictions that we're talking about.

Ms. Mecklenburg, if you have a position on, you know, the Eastern District and Northern District of Texas, I'll certainly hear from you on that if you have an objection to that.

MS. MECKLENBURG: Your Honor, I don't know Texas well enough that -- I understand that it is a very large area. In the Southern District of Texas, they restrict them only to certain counties in the Southern.

THE COURT: Yes.

MS. MECKLENBURG: They don't even say the whole --

THE COURT: I saw that.

MS. MECKLENBURG: -- (unintelligible).

But I am fine with him visiting his in-laws in the Eastern District and Northern District of Texas. I have no

objection to that.

THE COURT: Okay. Great. Okay. So we're making progress here.

MS. MECKLENBURG: And I will also say, for the record, I do think that now that I understand he's willing to have no contact whatsoever with Anosh Ahmed, that reduces, in our mind, his risk of flight.

THE COURT: Okay. Thank you for flagging that. I appreciate it.

Okay. So we will include his ability to travel in those districts to see family.

I sort of lost track of my list here, but --

MS. SANSONETTI: The remaining was the financial records, the limitations on where he could work --

THE COURT: Right.

MS. SANSONETTI: -- and the, you know, credit checks and --

THE COURT: Uh-huh.

MS. SANSONETTI: There doesn't appear to be, you know, overwhelming significant aspects on behalf of Mr. Khan. So just none of that seems to be necessary in terms of tracking him or making sure that he doesn't --

THE COURT: Do you -- and I don't know how much role you had in crafting these conditions. I have never seen a condition -- and the wording of this is strange to me. But it

says, no employment with any entity that bills federally. I don't even know what that means.

Do you know what that means, Ms. Mecklenburg?

MS. MECKLENBURG: That was crafted in the Southern District --

THE COURT: Yes.

MS. MECKLENBURG: -- of Texas. I understand your concern.

THE COURT: So we're going to take that one out.

MS. MECKLENBURG: Okay. That's fine.

THE COURT: Because I don't think anybody knows what that means.

MS. MECKLENBURG: Correct.

THE COURT: And I don't know that if he is out looking for a job, I don't even know how he would determine that.

Do you have a position, Ms. Mecklenburg, on credit checks and -- and, you know, I mean, I saw one thing that he would be required to provide a credit report once a year. Maybe that was -- that was somewhere in the materials. And to me that seemed reasonable rather than allowing just open-ended credit checks.

Do you have a position on this?

MS. MECKLENBURG: I don't know why probation couldn't do just a credit check on him periodically --

THE COURT: I don't know --

MS. MECKLENBURG:  -- if they wanted to.

THE COURT:  I don't know why they need my permission to do that --

MS. MECKLENBURG:  That's what --

THE COURT:  -- in an order setting conditions of release.

MS. MECKLENBURG:  Yes.  Right.

THE COURT:  Okay.  So we're going to get rid of that too.

MS. MECKLENBURG:  But they are not prohibited from doing that --

THE COURT:  No.

MS. MECKLENBURG:  -- in your order.

THE COURT:  No.  Okay.  So we'll leave that there.  I mean, that's their discretion.

Do you have a position, Ms. Mecklenburg, on new lines of credit?

MS. MECKLENBURG:  I think that's something that he should talk to the -- that he should at least let probation know if he is doing that.

THE COURT:  If he is seeking new lines of credit?

MS. MECKLENBURG:  Yes.

THE COURT:  Okay.  Ms. Sansonetti, do you have any issue with that?

MS. SANSONETTI:  Yeah, I am just not sure that it

is -- I'm not sure what substantiates that.  And Mr. Khan is going to have significant expenses in order to cover his legal fees.  He's going to -- you know, in the event that he operates his regular daily finances with a credit card, every time he uses it, it is a new -- it just doesn't appear to be something that is a restriction that really forwards any -- makes anybody more comfortable that he's not fleeing (unintelligible) or does anything useful in terms of assuring his stability.  And it is also something that creates a liability or a liberty restriction for Mr. Khan.

THE COURT:  Okay.

MS. MECKLENBURG:  Using a credit card, your Honor, would not -- I have never thought of that as --

THE COURT:  No.

MS. MECKLENBURG:  -- opening a new line of credit.

THE COURT:  I was reading it more as if he sought to open a new credit card or a --

MS. MECKLENBURG:  Yes.

THE COURT:  -- new credit account.

MS. MECKLENBURG:  Or take out a loan of some sort.

THE COURT:  Right.  Okay.  So why don't we do this, why don't -- rather than me writing through a list that's only obvious to me, let's go -- I'm going to go through an order setting the conditions of release.  Okay?  And so -- and this is a rough draft.  And if anybody has the paperwork --

otherwise we can take a brief recess after I go through these.

But I just want to go through what I am anticipating and imposing and hear from you if there are additional conditions or argument that I should remove any of these. Okay?

So why don't we -- I'll just -- I'll sort of stop after every few and check in with you. I guess that makes the most sense.

So my plan is to impose the following conditions: That Mr. Khan must submit to the supervision of pretrial services.

That he surrender any passport to pretrial services. I know he's already surrendered a passport.

But what I want to make clear to you, Mr. Khan, is that if in the coming months you find an old passport in a dresser drawer from any country -- I know there is some language in the original order that represented -- or that referred to Pakistan. I don't know if you ever had a Pakistani Passport. If you do, and it is expired and you find it, you have got to turn it in. Any travel document that you find, current, valid, or expired, I want those to be turned in to pretrial services.

Do you understand that, sir?

THE DEFENDANT: Yes, sir. Yes, your Honor.

THE COURT: Okay. And you can't get a new passport.

Okay. Any objection so far to anything that I have said?

MS. SANSONETTI: No, not from the defense.

THE COURT: Okay. Ms. Mecklenburg?

MS. MECKLENBURG: No. No, your Honor.

THE COURT: Okay. I'm sorry I looked down.

Okay. So your travel restrictions, sir, you're going to be limited to movement in the Northern District of Illinois, the Southern District of Texas, the Eastern District of Texas, and the Northern District of Texas. So you're going to be able to move freely in those districts.

I know that down in the Southern District of Texas they limit you by county and whatnot. I don't know what those counties are. And I think that's a little too granular.

MS. MECKLENBURG: Your Honor, the reason that they do is because they bord- -- the border is on some of those counties.

THE COURT: Okay. Understood.

Okay. Okay. Now the next condition, which is 7G, is to avoid contact, direct or indirect, with any person who may be a victim or witness in the investigation or prosecution. And my intention is to use the same list that was used in the Southern District of Texas.

Is there any objection to that?

MS. SANSONETTI: No objection to that.

THE COURT: Okay. So we'll just -- if somebody has that list. Otherwise we can try and to cut and paste it from the filing and tack it on to our own order.

MS. MECKLENBURG: The only thing I would ask, your Honor, is that nobody file that list publicly.

THE COURT: Understood. Certainly won't be public -- the order setting conditions of release is not -- it is on the docket but it is only accessible --

MS. MECKLENBURG: Right.

THE COURT: -- by a few people. So counsel will be able to get it and the Court will be able to get it, but it won't be public. And I'm not going to go through those names on the record for that reason.

You're not to possess a firearm, destructive device, or other weapon.

You're not to use or unlawfully possess a narcotic drug or other controlled substance.

You know, I guess in terms of -- well, we will get there in a minute.

I'm going to add 7S as in Sam, which is report as soon as possible to pretrial services every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

So Mr. Khan, that would just mean, you know, if you're driving to see a relative and you get pulled over, you get a

warning, you have got to let your pretrial services officer know. They will check a database from time to time to see if you have had any contacts with law enforcement. And if they do that and they find that you had a contact and it wasn't reported to them, that's going to raise a red flag for them because they're going to wonder why you weren't being honest about that. So it is really important. And it is a way just to ensure that you are being on the up-and-up with everybody who is involved in the case.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And then I'll check 7T. And I think here is where we can put in the limitation on employment. So, you know, by agreement he is not to work for Anosh, A-N-O-S-H.

Is that correct?

MS. SANSONETTI: That's correct.

THE COURT: Incorporated.

MS. MECKLENBURG: Or any other company or entity run by Anosh Ahmed.

THE COURT: Okay. Any objection to that?

MS. SANSONETTI: No, uh-uh.

THE COURT: Okay. So with that language -- I'm fine with that language.

All right. What did I miss? From your perspective,

Ms. Mecklenburg, what did I miss?

MS. MECKLENBURG: I think that you did not address the current financial transparency issues.

THE COURT: Okay. Okay. And so previously -- where I was on that is pretrial can run a credit check if they want to run a credit check.

You know, I don't -- I guess my inclination is not to impose a limitation on his ability to obtain credit, unless there is some specific concern that arises during the life of the case. And I think then you could motion it up with the Judge and ask for that to be addressed at that time.

But I think at this point -- I took a look at the financial snapshot in the pretrial services report, and I don't see anything that gives me any pause there.

MS. MECKLENBURG: That's fine, your Honor.

THE COURT: Anything -- anything else other than that issue that I neglected to raise?

MS. MECKLENBURG: Does he have to ask -- does he have to notify pretrial services if he takes out a new line of credit?

THE COURT: I'm going to say no to that.

MS. MECKLENBURG: Okay.

THE COURT: I think let's just keep it lean and mean.

MS. MECKLENBURG: And then the only other condition I saw in the original is that he has to share his current bank

statements with pretrial services to substantiate the financials that he has provided to them.

THE COURT: Do you know, is that -- is there -- and I know you didn't craft this, but is there concern that he was dishonest in the interview?

MS. MECKLENBURG: Not that I know of.

THE COURT: Okay.

MS. MECKLENBURG: But I think that's something that they do that (unintelligible). And so --

MS. SANSONETTI: And Judge, just the -- I mean, if you take a look at the report, they did corroborate some of what he said by running a check on the real estate that he reported --

THE COURT: Right. I saw that.

MS. SANSONETTI: -- and his wife.

THE COURT: Yeah. I'm going to -- I'm not going to include that condition.

MS. MECKLENBURG: That's fine.

THE COURT: I think if something comes up during the life of the case that gives the government some concern about his finances, I think it could be raised through a motion. But I think if -- you know, he's going to be supervised in a different district. As a courtesy, I just think, you know, some of these conditions, I'm not even sure exactly what they are for. And others I just don't see a basis for imposing them.

Ms. Sansonetti, was there anything from your perspective that I failed to raise?

MS. SANSONETTI: No, that's it. Thank you, your Honor.

THE COURT: Okay. So who wants to put together the order? That's the next question.

MS. MECKLENBURG: I could do it.

THE COURT: Okay.

MS. MECKLENBURG: And I assume the electronic monitoring, you have also said is -- are not going to be imposed.

THE COURT: I'm not imposing electronic monitoring.

MS. MECKLENBURG: Yes. All right.

THE COURT: And so if you -- if you guys want to work together to put the order -- I'm also going to ask -- you know, I'm going to ask for a signature bond, and I'm going to ask for it to be $50,000. I think there is -- I know it is mostly symbolic, but I think it is important.

And so Mr. Khan, the idea behind that, and I'm sure you remember this from when you were down in Texas, is that you're signing for a dollar amount. You're not actually posting property. You're not actually putting money up. But what you're saying is, you know, if you don't follow the rules while you're on release, in addition to getting into trouble with the Court and having bigger problems than you already

have, they would also -- the government would also be able to come after you for $50,000.

Do you understand that, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  So we'll take a brief recess.  If you guys can work together to fill out that paperwork, assuming it is all in order, I'll sign it when I come back out.

We have already reviewed the conditions.  So that should be relatively quick.  So is 10 minutes enough?  Do you think that's fair?

MS. MECKLENBURG:  I think so.  Your Honor, do you have an extra copy of a blank order?

THE COURT:  I'm sure we do.  And if we don't, we can get one.

MS. MECKLENBURG:  I didn't bring one.

THE COURT:  That's okay.  All right.  We'll stand in recess for 10 minutes, okay?

MS. MECKLENBURG:  Thank you, your Honor.

MS. SANSONETTI:  Thank you, your Honor.

(Brief recess.)

THE COURT:  Okay.  All right.  Good afternoon again, everybody.  We're back on the record.

So I have in front of me an appearance bond as well as an order setting conditions of release.

Okay.  And the appearance -- the appearance bond, I

think I'm going to need Mr. Khan's signature.

MS. SANSONETTI: We weren't sure, Judge. If you could just tell us where he's supposed to sign.

THE COURT: Yeah. It is weird. It is a witness -- it says witness's signature. But I guess I would just say --

MS. SANSONETTI: It is fine. He can just sign that.

THE COURT: Yeah. I would have him sign on the first line under the date here.

MS. SANSONETTI: Okay.

THE COURT: Thank you.

MS. MECKLENBURG: And your Honor, I didn't put in there, I just realized, that I didn't say cannot work for Anosh Ahmed or any entity owned or managed by him.

THE COURT: Okay. So that's going to be Condition T as in Thomas.

And will you spell that for me one more time, Ms. Mecklenburg?

MS. MECKLENBURG: Yes. It is A-N-O-S-H, last name A-H-M-E-D.

THE COURT: And what's the name of the entity?

MS. MECKLENBURG: It is Anosh, Inc.

THE COURT: Got it.

MS. MECKLENBURG: But he also runs other entities.

THE COURT: Right.

So as to Condition T, I'm just adding that Mr. Khan

cannot work for Anosh Ahmed or Anosh, Inc., or any other entity.

Okay. All right. So I have got the appearance bond here. It is for $50,000.

And on page 2 of this, Mr. Khan, I know you're a long way out there, but can you -- if you can see from there, I just want to make sure that you signed this document.

Did you sign this, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Did you review it with your lawyer before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. And we went over it in court a few minutes ago too, so I'm satisfied that you understand it.

Do you have any questions about it, sir?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. And then the order setting conditions of release is four pages. And then are we going to have the addendum here with that list of names from the Southern District of Texas?

MS. MECKLENBURG: It is the same -- it is the same list, your Honor, that is on your docket --

THE COURT: Okay.

MS. MECKLENBURG: -- in connection with the Southern District of Texas order.

THE COURT: Okay. Why don't we -- before we send this up to docketing, I'm going to pull that list off and incorporate it into this order as well. But it -- so as long as everybody is on the same page, it is going to be the same list of names from Texas.

Any objection to that?

MS. SANSONETTI: No objection.

THE COURT: Okay. Great.

So the conditions are the same as the ones we went over a few moments ago and I am --

MS. MECKLENBURG: Actually, your Honor, I'm sorry to interrupt. But there was a misnomer on that list now that I think about it. I redid it, but I don't know that it ever got into the docket. So I would like to send it up to Ms. Foster.

THE COURT: Yes.

MS. MECKLENBURG: It characterizes someone as an unindicted --

THE COURT: Unindicted --

MS. MECKLENBURG: -- co-conspirator, and I don't think that's fair.

THE COURT: Okay.

MS. MECKLENBURG: I would rather characterize that person right now as a witness.

THE COURT: Okay. So why don't we do this. We'll wait to send this order to docketing until we get that list

from you.  And if you can --

MS. MECKLENBURG:  I'll do it -- I can do it in five --

THE COURT:  Great.  And if you can obviously CC Ms. Sansonetti on that --

MS. MECKLENBURG:  Yes, of course.

THE COURT:  -- too.

So that will be included in the order.

The conditions are the same.  It is as the ones we reviewed a moment ago.  I added that Mr. Khan cannot work for Anosh Ahmed or Anosh, Inc. or any other entity managed or owned by Anosh Ahmed.  I think that covers the waterfront there.

Okay.  Do you have you any questions about that, Mr. Khan?

THE DEFENDANT:  No.

THE COURT:  Okay.  And I know it is a long way out there, but can you see your signature on this page?  Is that yours?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  And I will note that you reviewed this with your lawyer, right?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Great.

Okay.  So we'll get that list.

The only other thing I want to say is, you know, I didn't make a real clear record of this the first time we were

out here a few moments ago is that Officer Diaz's report recommended conditions that were lesser than the conditions that we put in place. But I think that, obviously, pretrial services doesn't take the evidence in the case and the strength of the evidence in the case into consideration when it fashions those conditions.

So even though the order that's being entered here includes significantly more conditions, I think there is a basis for those conditions.

You know, the last thing I'll say, Mr. Khan, before we're done, is that it is -- you know, the statute is written in such a way that it favors your release under the set of circumstances that you come to the court in. You're presumed innocent in the case. And that stays with you throughout the case.

But what I will tell you is that folks who are on bond and on release do much, much better than folks who are in custody in the sense that it is far easier for your lawyer to represent you, to communicate with you, for you guys to have meaningful communication. It is also -- you have a privilege now that you will be able to demonstrate to the trial judge in your case that you're taking this very seriously and that you're making the most of your time while you're on release. And that cannot hurt you, that can help you.

The only way it hurts you is if you don't hold up your

end of the bargain, okay?  And if you don't hold up your end of the bargain, you're going to have significant troubles, both with Judge Coleman, and if she refers it back to me, with me.  Okay?

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Does the government have anything else they'd like to add?

MS. MECKLENBURG:  No, your Honor.

THE COURT:  Okay.  Ms. Sansonetti, anything else?

MS. SANSONETTI:  No.  Thank you, your Honor.

THE COURT:  Okay.  So once I get that sheet, we'll enter the order, and we'll be good to go.  Okay?

MS. MECKLENBURG:  Do I need to move for --

THE COURT:  Exclusion of time?

MS. MECKLENBURG:  -- exclusion of time?  I think --

THE COURT:  Well, yeah, you should probably make the motion.

MS. MECKLENBURG:  Yes.  The government moves for exclusion of time through the next court date.

THE COURT:  Any objection, Ms. Sansonetti?

MS. SANSONETTI:  No objection.

THE COURT:  Okay.  So time will be excluded through the next court date to allow the government to begin to prepare the voluminous discovery that it referenced earlier and to

allow for Mr. Khan to communicate with counsel about that discovery and about other aspects of the case.

MS. SANSONETTI: Okay. Judge, I did have one question. Did Judge Coleman relay in any way whether Mr. Khan's appearance would be -- no, okay. I'll take it up with her.

THE COURT: Yeah. I'd recommend that you reach out to her court --

MS. SANSONETTI: Okay.

THE COURT: -- and ask.

MS. SANSONETTI: Okay. Thank you.

THE COURT: Thank you.

MS. MECKLENBURG: I'm being asked, your Honor, if he needs to be processed by the marshals. He was processed in Texas.

THE COURT: Yeah. My understanding is -- my experience is that if you are processed by the marshals in any district, you're in their system then.

MS. MECKLENBURG: Yes.

THE COURT: And so --

MS. MECKLENBURG: His fingerprints will be in there.

THE COURT: I think he is good. Yeah. As long as he was photographed and printed and --

MS. MECKLENBURG: Yes.

THE COURT: -- put through all the steps down in

Texas, that's in their system.

MS. MECKLENBURG:  That's my understanding as well.

THE COURT:  Okay.

MS. SANSONETTI:  Thank you.

THE COURT:  Thank you.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

*/s/Pamela S. Warren*                    August 1, 2025
Official Court Reporter - Retired              Date
United States District Court
Northern District of Illinois
Eastern Division