| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> ANOSH AHMED, et. al. | No. 25 CR 321 <br><br> Judge Sharon Johnson Coleman |

**GOVERNMENT'S OMNIBUS RESPONSE TO
PRETRIAL MOTIONS OF KHAN AND CHAUDHRY**

The United States of America, by Andrew S. Boutros, United States Attorney for the Northern District of Illinois, respectfully submits this omnibus response to defendant Suhaib Chaudhry's and defendant Sami Khan's pretrial motions for severance and to strike, motions to dismiss, motions for immediate disclosure of *Brady* material, motions for a bill of particulars and motion for early return of trial subpoenas. (Dkts. 62, 64, 65, 66, 67, 68, 69, 71) (collectively, the "Pretrial Motions"). For the reasons set forth below, the government requests that this Court deny the motions for severance and to strike, the motions to dismiss, the motions for immediate disclosure of *Brady* material, and the motion for a bill of particulars. As also set forth below, the government does not oppose defendant Chaudhry's motion for early return of trial subpoenas.

## I.    BACKGROUND OF THE CASE

As alleged in the Second Superseding Indictment ("Indictment"), this case arises out of a single, widespread scheme to submit more than $800 million in false claims to the United States Health Resources and Services Administration ("HRSA")

1

for reimbursement of Covid-19 testing of uninsured individuals through what is known as the HRSA Program. The scheme ran from approximately June 2021 through approximately March 2022, when the government program ran out of money.

The Indictment charges that the scheme started in or around April 2021, that Ahmed, Khan and Sirajudeen caused false claims for Covid-19 testing to be submitted through O'Hare Clinical Labs ("OCL") (Indictment, Count One, ¶¶2, 3), that Chaudhry also had a role in the scheme (Count One, ¶¶4-6) and that Ahmed, Khan and Chaudhry continued the scheme through in or around March 2022 by submitting and causing the submission of false claims for Covid-19 testing through non-operational laboratories in Texas (Count One, ¶¶1.q, 1.t, 1.u, 6). The Indictment alleges that beginning in or around April 2021, Ahmed, Khan and Chaudhry collected personal identifiers for purported patients and used those identifiers to cause OCL, Lab A and the non-operational Texas labs to submit false claims for Covid-19 testing (Indictment, Count One, ¶¶5, 6). The Indictment further alleges that, for the purpose of executing this overall scheme involving OCL, Lab A, and the non-operational Texas labs, Ahmed caused the transmission of fourteen wire communications in interstate commerce (Counts 1-14). Khan is also charged with causing four of those wire communications, each of which involved the non-operational Texas Labs (Counts 7, 8, 11 and 13).

In addition, Ahmed, Khan and Chaudhry are all charged in Count Nineteen, a conspiracy to knowingly launder the proceeds of unlawful activity, namely wire fraud

2

and violations of the Anti-Kickback Statute ("AKS").  Count Nineteen also identifies Sirajudeen as an uncharged member of the same conspiracy. At trial, the government will prove that the funds Ahmed, Khan, Chaudhry, and Sirajudeen agreed to launder, as alleged in Count Nineteen, were proceeds of the wire fraud scheme charged in Counts One through Fourteen and proceeds of the AKS conspiracy and substantive AKS violations charged in Counts Fifteen through Seventeen. Count Nineteen provides the names on the bank accounts involved in the laundering, the last four digits of the account numbers for the bank accounts involved in the laundering conspiracy, and the dates of the laundering transactions.  Defendants admit in their pretrial motions that the government has produced substantial discovery, including bank records.

Counts Twenty through Twenty-Four allege substantive money laundering transactions with respect to Ahmed and Sirajudeen, each of which involved proceeds of wire fraud and AKS violations. At trial, the government will prove that the funds Ahmed and Sirajudeen laundered, as alleged in Counts Twenty through Twenty-Four, were proceeds of the wire fraud scheme charged in Counts One through Fourteen and proceeds of the AKS conspiracy and substantive AKS violations charged in Counts Fifteen through Seventeen.

Lastly, Count Eighteen charges Ahmed with a felony violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in connection with Ahmed's act of obtaining individually identifiable health information of patients of

3

Hospital A in April 2021. As alleged in paragraphs 4-6 of Count One of the Indictment, this conduct (in which Khan and Chaudhry are also alleged to have participated) was part of the overall wire fraud scheme.

## II.    DEFENDANTS' PRETRIAL MOTIONS

Khan and Chaudhry have filed multiple pretrial motions, attempting to bar evidence of their participation in and/or knowledge of the scheme. Khan filed four pretrial motions: (1) Motion to Sever Defendants Ahmed and Sirajudeen and To Preclude Evidence That Relates Solely to Ahmed and Sirajudeen (Dkt. 67); (2) Motion to Dismiss Count 19 As Duplicitous and To Preclude Evidence related to Ahmed and Sirajudeen (Dkt. 68); (3) Motion for Bill of Particulars Related to Count 19 (Dkt 69); and (4) Motion to Adopt the Motions of Chaudhry (Dkt. 71). Chaudhry filed four pretrial motions: (1) Motion for Severance and to Strike (Dkt. 62); (2) Motion For Immediate Disclosure of Material Pursuant to *Brady v. Maryland* and Its Progeny (Dkt. 64); (3) Motion to Adopt Khan's Motions (Dkt. 65); and (4) Motion for Early Returns of Trial Subpoenas (Dkt 66). With the exception of the Motion for Early Return of Trial Subpoenas, which the government does not oppose, these motions should be denied because they are premature, speculative and without merit.[1]

---

[1] For purposes of the pretrial motions, this Court should accept all allegations of the indictment as true. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (citations omitted).

### III.   ARGUMENT

### A. Defendants' Motions to Sever and Strike Are Premature, Speculative and Without Merit

There is a strong preference, in fact a presumption, in the federal system that individuals charged as part of a conspiracy or scheme (both of which are charged here), be tried together to economize judicial and prosecutorial resources and to give the jury a full picture of the allegations. Because of this, severance motions are granted infrequently and only when there is a "serious risk" that a joint trial would compromise specific trial rights or prevent a jury from making a reliable judgment about guilt or innocence. Defendants' motions to sever should be denied because they cannot meet this burden. Their arguments are premature, speculative, and do not rise to a level sufficient to warrant severance.

*1. Defendant's Motions to Sever and Strike are Premature and Speculative*

Defendants' motions to sever and strike allegations relating to Ahmed or Sirajudeen are premature and speculative because they are based on the assumption that neither Ahmed nor Sirajudeen will be present at trial, currently set for July 2026.[2] Although the government expects Sirajudeen to plead guilty prior to trial, the he has not yet changed his plea and, more importantly, the parties do not yet know if Ahmed will be a defendant at trial.

---

[2] The trial date is subject to a pending request by defense counsel to continue the trial to September 2026.

On November 30, 2025, the United States received notice that Ahmed was arrested in Serbia pursuant to a Red Notice, i.e., a global alert seeking the provisional arrest of Ahmed, with a view to extradition, based on a national arrest warrant. Within days, the United States government confirmed to Serbia that it intended to seek extradition. The government's extradition package was submitted to Serbia on January 23, 2026, prior to its due date. As of now, the United States understands that Ahmed remains in custody in Serbia, pending extradition.[3] It is unknown if Ahmed will be extradited, and if he is, it is unknown when. The United States will advise the Court of any updates and may ask for a continuance of the trial date to serve the interests of trying all defendants together and preserving resources to avoid having to try the case twice.[4]

2. *Defendant's Motions to Sever and Strike Lack Merit*

Under Rule 8(b), "[t]he indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "There is a strong policy preference in favor of the joinder of qualifying charges, and the rule must be broadly construed toward that end." *See United States v. Alexander*, 135 F.3d 470, 476 (7th Cir. 1998) (cleaned up). "Rule 8(b) is satisfied

---

[3] The government learned on December 30, 2025, that a Serbian Court denied Ahmed's petition to be released to a hotel in Belgrade and ordered that Ahmed remain in Serbian custody.

[4] If Serbia does not extradite Ahmed, and the only defendants at trial are Khan and Chaudhry, the government will tailor its evidence to only relevant evidence in accordance with Federal Rules of Evidence 401 and 402.

when defendants are charged with crimes that well up out of the same series of such acts, but they need not be the same crimes." *United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007) (cleaned up). "A conspiracy charge combined with substantive counts arising out of that conspiracy is a proper basis for joinder under Rule 8(b)." *United States v. Williams*, 553 F.3d 1073, 1078–79 (7th Cir. 2009). *See also United States v. Lanas*, 324 F.3d 894, 899-900, (7th Cir. 2003) (rejecting a claim of improper joinder of various schemes where the facts showed parts of a common scheme or plan to defraud one victim, the "same or similar in type" even though the scheme involved different types of fraud and the defendants had different roles).

Here, the Indictment properly joins Khan and Chaudhry with Ahmed and Sirajudeen. The Indictment alleges that Khan and Chaudhry had knowledge of and/or a role in the wire fraud scheme beginning with OCL and continuing through the Texas non-operational labs, and charges Khan with causing the transmission of specific wire communications in interstate commerce for the purpose of executing the scheme. Count Nineteen charges the four defendants with being part of the same conspiracy to launder the proceeds of unlawful activity, which included the proceeds of the wire fraud scheme and the AKS violations.

In their Pretrial Motions, Khan and Chaudhry essentially argue that factually, they were not part of the wire fraud scheme when OCL submitted false claims, and that they were involved only in the Texas labs submitting claims for Covid-19 testing. As noted above, the allegations of the Indictment must be taken as true for purposes

7

of the pretrial motions, and defendants cannot factually dispute those allegations at this stage. Where the Indictment alleges a scheme and conspiracy involving all defendants, the defendants are properly joined and should not be severed. *See United States v. Sims*, 808 F. Supp. 607, 617 (N.D. Ill. 1992) (Alesia, J.), denying a motion to sever where the moving defendant argued that he was charged in only four of the nineteen counts, and that the only conduct attributable to the moving defendant was laundering proceeds of a larger conspiracy. The *Sims* court further noted that under Seventh Circuit precedent, disparity of evidence among defendants does not justify severance. *Id.* at 618. Here, it is up to the jury to decide when defendants entered and/or learned of the scheme and conspiracy, and what their roles were. It is also up to the jury to decide whether Khan and Chaudhry knowingly laundered the proceeds of unlawful activity. These are questions of fact that should not be determined by the Court on pretrial motions.

In any case, proper joinder does not turn on an individual's role in the alleged conspiracy, and it is not improper joinder to charge defendants with lesser roles in the same counts as defendants with greater roles. *See United States v. Balogun*, 971 F. Supp. 1215, 1223 (N.D. Ill. 1997) ("Balogun need not participate in every act in furtherance of the conspiracy to be properly joined, but need only have knowingly joined the conspiracy."). Similarly, joinder remains appropriate even though a defendant does not appear in each of the substantive counts. *Williams*, 553 F.3d at 1079 (defendant properly joined in 10-count indictment for conspiracy to commit

8

armed robbery even though not charged in the substantive counts).

Here, the government has alleged a scheme and a conspiracy and identified acts defendants took related to that scheme and conspiracy. This fulfills the joinder requirement. *United States v. Diaz*, 876 F.2d 1344, 1356 (7th Cir. 1989) ("Rule 8(b) only requires that the conspiracy be alleged — there is no requirement that the government demonstrate, at the pleading stage, sufficient evidence to support joinder.").

Defendants do not dispute that, under Federal Rule of Criminal Procedure 8(b), the charges against them and co-defendant Ahmed are properly joined. Instead, they assume that joinder here is proper, but they seek relief under Federal Rule of Criminal Procedure 14, which allows for separate trials if the joinder of defendants causes prejudice. If joinder is appropriate under Rule 8(b), as it is here, Fed. R. Crim. P. 14 allows the Court to order separate trials only where defendant shows a serious risk that a joint trial would compromise a specific trial right or would prevent the jury from making a reliable judgment concerning guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). "[T]he defendant bears a heavy burden . . . when arguing that the prejudice warrant[s] severance." *United States v. Ervin*, 540 F.3d 623, 629 (7th Cir. 2008). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007) (internal quotations and citation omitted).

9

This preference for a single trial is "especially strong for coconspirators who are indicted together." *United States v. Jett*, 908 F.3d 252, 276 (7th Cir. 2018). Per the Supreme Court, a district court should grant a Rule 14 severance motion only if defendant is able to demonstrate that "there is a *serious* risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987) (citations omitted)).

Consistent with *Zafiro*, Seventh Circuit cases make clear that the granting of severance motions is disfavored and generally considered unnecessary except in the most unusual circumstances. *United States v. Cardena*, 842 F.3d 959, 980-81 (7th Cir. 2016) ("[T]here is a presumption that participants in a conspiracy or other criminal schemes should be tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme.") (internal quotations and citation omitted); *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) ("There is a particularly strong preference for a single trial with codefendants who have been jointly indicted." (citation omitted)); *United States v. Buljiubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) (describing "strong interest in joint trials" for judicial

10

economy and because "[a] joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome" (citations omitted)). This preference is "especially strong for coconspirators who are indicted together." *United States v. Jett*, 908 F.3d 252, 276 (7th Cir. 2018). A defendant therefore bears a "heavy burden" of showing that a joint trial would prevent a reliable judgment. *United States v. White*, 737 F.3d 1121, 1133 (7th Cir. 2013); *United States v. Burke*, No. 19 CR 322, 2022 WL 1970189, at *84 (N.D. Ill. June 6, 2022)(Dow, J.).

In their pretrial motions, Khan and Chaudhry maintain that the evidence presented at trial against Ahmed will impermissibly prejudice them based on a "spillover effect." Dkt. 63, p. 12; Dkt. 70, pp. 11, 14. Severance is not warranted on those grounds. A defendant is not entitled to severance "merely because [he] may have a better chance of acquittal in [a] separate trial[ ]." *Zafiro*, 506 U.S. at 540. Thus, the oft-cited "evidentiary spillover" theory as a basis for requiring severance has been almost universally rejected in the Seventh Circuit. *See United States v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir. 2001). ("[A]s a basis for requiring severance, 'evidentiary spillover' has been rejected."); *see also United States v. Ervin*, 540 F.3d 623, 630 (7th Cir. 2008) (alleged prejudicial spillover effect did not warrant separating drug conspiracy and homicide counts for trial); *United States v. Shorter*, 54 F.3d 1248, 1259 (7th Cir. 1995) ("Such 'spillover' claims alone do not warrant severance.").

There may always be some spillover effect, but whether that is prejudicial *and* cannot be mitigated is the issue. Jury instructions are widely accepted as a less

drastic form of relief to cure the risk of prejudice in joint trials where not all defendants are charged in every count, *see Zafiro*, 506 U.S. at 538-39.Courts consistently have ruled that a limiting instruction will typically suffice to cure any risk of potential "spillover" prejudice. *See, e.g., United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002) (discussing presumption that jury can capably sort through evidence and follow court's limiting instructions to consider each defendant separately); *United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995) (finding that the defendant failed to rebut presumptions of capable jury functioning and consideration of each defendant separately per the court's limiting). There is a presumption that the jury follows those instructions. *See, e.g., Zafiro*, 506 U.S. at 541; *United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006); ("[T]he jury is presumed to follow the instructions that they were given . . ."); *United States v. Duff*, 219 F.R.D. 600, 603 (N.D. Ill. 2004) ("If evidence is presented carefully and proper jury instructions are issued, juries are presumed capable of keeping track of which evidence pertains to which charges, even where, as here, some defendants are charged with more extensive and infamous criminal acts than others.") (citing *United States v. Vest*, 116 F.3d 1179, 1190 (7th Cir. 1997) (noting that while the trial was complex, it was not so complex as to render district court's decision to deny severance request an abuse of discretion)). Defendants have failed to provide anything more than a denial of facts to support the extreme relief of granting severance. Defendants have not carried their burden to show any reason why the presumption that juries follow instructions would

not apply here. The jury instructions exist for a reason and there is no indication here that the jury would not follow them versus any other joint trial.

Against this backdrop, to claim prejudice due to evidentiary spillover, defendant must do more than "speculat[e]" about "spill over guilt." *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993). Indeed, defendant must rebut the presumptions that a jury will capably sort through the evidence and follow instructions from the Court to consider each defendant separately. *Id.* at 1286. Where, as here, the court maintains a "strong preference" to try co-conspirators together and defendants do not point to any evidence that, should this case proceed to trial, a well-instructed jury could not sift through these issues, severance is inappropriate. *Morales*, 655 F.3d at 624–25. As indicated above, the oft-cited "evidentiary spillover" theory as a basis for requiring severance has been almost universally rejected in the Seventh Circuit. Here, the risk is even less than in other cases because there are no post-arrest statements by Ahmed that would "spillover" to implicate Khan or Chaudhry.[5]

The Supreme Court, too, has noted that, even in situations where prejudice may be shown, Rule 14(a) does not require severance. *Zafiro*, 506 U.S. at 538-39. Instead, "it leaves the tailoring of the relief to be granted, if any, to the district court's

---

[5] In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's Sixth Amendment right to confront witnesses against him is violated when the confession of a non-testifying co-defendant, which expressly implicates the defendant as a participant in the crime, is admitted in the joint trial of the two defendants. This holds true even if the jury is instructed to consider the confession only against the defendant who made the statement. *See id.* at 135-37. There is no *Bruton* issue in this case.

sound discretion," including through the use of limiting instructions, as discussed above. *Id.* (citations omitted). Therefore, the Seventh Circuit recognizes that "[i]n all but the 'most unusual circumstances,' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009) (quoting *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985)).

There are no unusual circumstances present in this case warranting severance. The government will present relevant evidence and the jury will determine the facts, including defendants' role in and knowledge of the scheme and conspiracy and their knowing laundering of the proceeds of the unlawful activity. Defendants claim that they had no involvement in or knowledge of the false claims submitted by OCL, but these are claims of fact for the jury to decide. Defendants' attempt to have the Court decide those facts pursuant to pretrial motions should be rejected.

In addition to their spillover argument, defendants argue that the government cannot introduce evidence on the AKS conspiracy charged in Count Fifteen (or in connection with the substantive AKS violations in Counts Sixteen and Seventeen), and that these charges should be severed because Khan and Chaudhry did not know about the kickbacks. This argument is premature, given Ahmed's current status. Moreover, to convict the defendants of conspiracy to commit money laundering, the government must show that the proceeds are the result of some unlawful activity, but need not show that defendants knew the specific illegal activity. *United States v. Han*,

14

637 F.Supp.3d 527, 539-40 (N.D.Ill. 2022) (Wood, J.), citing *United States v. Turner*, 400 F.3d 491, 497 (7th Cir. 2005). Count Nineteen alleges that the funds defendants agreed to launder as part of the money laundering conspiracy were in fact proceeds of both wire fraud and illegal kickbacks. As a result, even if Ahmed is not present at trial and the jury is not asked to return a verdict on Counts Fifteen through Seventeen, the government should be permitted to present evidence showing that the funds defendants laundered and agreed to launder were in fact proceeds of both wire fraud *and* illegal kickbacks, as alleged in Count Nineteen. To find the defendants guilty of the money laundering conspiracy charged in Count Nineteen, the jury will not need to find defendants specifically knew the funds were proceeds of wire fraud or proceeds of kickbacks, so long as they knew the proceeds were criminally derived.

Similarly, defendants claim that the government cannot introduce evidence of the HIPAA violation charged in Count Eighteen because defendants did not know about the HIPAA violation. Again, this argument is premature, given Ahmed's current status. If Ahmed is not present at trial, the jury will not be asked to return a verdict on Count Eighteen. Regardless of whether Ahmed is present at trial and whether the jury is asked to return a verdict on Count Eighteen, the government is entitled to introduce evidence that the names and identifiers of purported Covid-19 test-takers came from a Hospital A patient list and not from a legitimate testing site, and that the defendants knew that the identifiers did not come from a legitimate testing site, to show that the proceeds that defendants conspired to launder were

15

generated from illegal activity. Whether Khan and Chaudhry knew that the names and other identifiers they were submitting as coming from testing sites came from a Hospital A patient list or other illegal sources and not legitimate testing sites is a question of fact for the jury to decide.

Cases are not severed at trial simply because one defendant was not charged in every single count as his co-defendant. "[T]he fact that the evidence against [a defendant]'s co-defendants might have been proportionally greater than the evidence against him is not itself grounds for a severance." *Hendrix*, 752 F.2d at 1232. In this case, if the government presents evidence sufficient to convict defendants at trial, neither the "quantity" nor "nature" of the evidence against each defendant—when compared to that of his co-defendants—justifies severance. *United States v. Morales*, 655 F.3d 608, 626 (7th Cir. 2011).[6]

---

[6] An initial severance was granted in *Morales* to reduce the number of defendants from fourteen to seven, due not to any spillover prejudice but rather practical workability issues. *Morales*, 655 F.3d at 624 ("initial severance was a Solomonic compromise between the numerous and mutually exclusive severance proposals"); *see United States v. Delatorre*, 522 F. Supp. 2d 1034, 1049-57 (N.D. Ill. 2007), *aff'd sub nom. United States v. Benabe*, 436 F. App'x 639 (7th Cir. 2011) (district court's discussion regarding the initial severance in this case, finding "[w]hile no defendant has demonstrated the need for severance based on misjoinder or the traditional concerns of prejudice . . . time delays and procedural complications from this 'mega-trial'" would be significant, and therefore severed the fourteen-defendant case simply because it was "unworkable" from a procedural standpoint and imposed a "systematic" burden, including, for example, the difficulty of even fitting all fourteen defendants and their attorneys in the courtroom). A trial in this case, with potentially four defendants, is not a megatrial that poses a systematic burden. Rather, severance would pose a burden by requiring that the court and prosecution potentially conduct the same trial twice.

Juries are routinely asked to decide the guilt of defendants who are named in a smaller number of counts. This is a common facet of federal criminal trial practice and does not merit the extraordinary step sought by Khan and Chaudhry. The jury will be instructed to consider separately the counts that relate to Khan and Chaudhry from those that do not. Jurors will readily be able to grasp the difference between crimes that do not concern Khan and Chaudhry, and acts that do concern them. The government will limit its evidence to what is relevant and will request that the Court provide Seventh Circuit Pattern Jury Instruction 4.07 to the jurors, which states:

> Even though the defendants are being tried together, you must consider each defendant and the evidence concerning that defendant separately. Your decision concerning one defendant, whether it is guilty or not guilty, should not influence your decision concerning any other defendant.

In any event, the Seventh Circuit has held that

> [A] joint trial may create a risk that the jury will hear evidence that is inadmissible with respect to one defendant. Inconsistent defenses also may create prejudice. But as a rule, evidence and arguments may be controlled by the court, and inconsistent defenses are not enough to require severance. Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact. Unless the defenses are so inconsistent that the *making* of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense *precludes* acquittal of other defendants, it is not necessary to hold separate trials.

*United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) (internal citations omitted). Here, defendants have not shown that there are antagonistic or inconsistent defenses such that severance is necessary. "Even a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense

precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right." *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001) (citations omitted). Moreover, the Seventh Circuit has repeatedly held that finger-pointing among defendants is insufficient to warrant severance absent extraordinary circumstances, which are not present here. *See, e.g., id.*; *United States v. Farano*, 749 F.3d 658, 662 (7th Cir. 2014) (finger-pointing and blame-shifting do not "control []or illuminate the question of severance.") (quotation omitted); *United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010) ("Since *Zafiro*, we have consistently held that blame-shifting among codefendants, without more, does not mandate severance."); *United States v. Hughes*, 310 F.3d 557, 564 (7th Cir. 2002) ("Mere 'finger-pointing' at another defendant, such as occurred here, is not sufficient to require severance."); *United States v. Hartmann*, 958 F.2d 774, 787 (7th Cir. 1992) ("We have held that such finger-pointing does not justify separate trials, and is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact.") (quotation omitted); *United States v. Brunn*, 809 F.2d 397, 407 (7th Cir. 1987) ("Two defendants are rarely pleased to be prosecuted together." But "[w]hile there was no doubt some hostility and finger pointing during the joint trial, this alone is insufficient to justify granting a severance.") (citations omitted). Therefore, defendants Khan and Chaudhry have failed to meet the high burden required to justify a severance, and their request for severance should be denied.

**B. Defendants' Motions to Dismiss for Duplicity Should be Denied**

The defendants claim that Count Nineteen, charging conspiracy to launder proceeds of illegal activity, should be dismissed for duplicity, because the proceeds laundered were generated by two illegal activities — AKS violations and wire fraud. Duplicity means joining two or more separate and distinct offenses in one count. *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978) (the Federal Rule "necessarily contemplates that two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count."). Duplicity does not apply to a single continuing course of conduct, constituting a scheme or conspiracy, even where the proceeds are generated by more than one illegal activity. *Id.*

A scheme often generates proceeds from different types of transactions, but that does not make it subject to dismissal for duplicity. *See e.g., United States v. Zeidman*, 540 F.2d 314, 318 (7th Cir. 1976) (rejecting duplicity challenge in debt collection fraud case where scheme alleged that defendant defrauded both creditors/clients and debtors in numerous transactions involving many misrepresentations over more than three-year period, and explaining that fraud schemes are "multi-faceted" and that the offense conduct had a sufficient nexus to be considered one scheme); *United States v. Mason*, 2016 WL 2755401, * 2 (N.D. Ill. May 12, 2016) (Coleman, J.) (rejecting duplicity challenge in case involving defendant who submitted false documents to receive payments from parties defendant had contracts with, including City of Chicago and three out-of-state government entities, and

reasoning that conduct "occurred during the same two year time span, targeted the same class of victims, and utilized the same sort of fraudulent communications"); *United States v. Freed*, 2016 WL 374133, * 2-3 (N.D. Ill. Feb. 1, 2016) (Dow, J.) (rejecting duplicity challenge in four-year fraud scheme where defendants defrauded both their joint venture partners and bankers using numerous different misrepresentations in order to obtain money to pay operating expenses for defendant's business); *United States v. Hollnagel*, 2011 WL 3664885, at * 4, 9-10 (N.D. Ill. Aug. 19, 2011) (St. Eve, J.) (no duplicity in nine-year fraud scheme where defendants obtained money from numerous investors and financial institutions and where scheme involved both misrepresentations to lenders and bribes, citing *Zeidman* and noting that defendants had same goals: obtaining financing and enriching themselves). Here, too, the goal of the conspiracy alleged in Count Nineteen was to launder the proceeds of illegal activity, regardless of the specific activity.

Likewise, neither a money laundering conspiracy nor a substantive count of money laundering is duplicitous simply because it involves the proceeds of different forms of specified unlawful activity. *See, e.g.*, *United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009) (finding no duplicity and no material variance with respect to money laundering conspiracy between jeweler and multiple different drug dealers to launder proceeds of dealers' separate drug dealing operations involving both cocaine and marijuana); *United States v. Staph*, Criminal No. 09-42, 2010 WL 2884694, at *8 (W.D. Pa. July 21, 2010) (finding conspiracy to commit money laundering count was

not duplicitous where "financial transactions all were part of the same conspiracy to launder money, even if they did not relate to the same unlawful activity").

In this case, Count 19 is not duplicitous because the defendants are charged with a single conspiracy of money laundering, regardless of how the proceeds were generated. The fact that the same proceeds were generated by different methods of unlawful activity within the same conspiracy does not make a charge duplicitous. *See United States v. Spencer*, 592 F.3d 866, 875 (8th Cir. 2010) (holding that an indictment was not duplicitous where the same offense was committed in more than one way). Here, Count Nineteen charges only one crime, conspiracy to commit money laundering, with the objective to conceal financial transactions involving the proceeds of unlawful activity; the financial transactions constituting the laundering all were part of the same conspiracy, even if they were not generated by the same unlawful activity; or even, where, as here, the same proceeds were generated by more than one unlawful activity. A single money laundering conspiracy is not duplicitous regardless of whether the illegal proceeds were generated by varying conduct within the same scheme. *See United States v. Bruun*, 809 F.2d 397, 406 (7th Cir.1987); *United States v. Patterson*, 162 F. Supp. 2d 1017 (N.D. Ill. 2001) (Bucklo, J.) (an indictment is not duplicitous because it alleges conspiracy to commit several crimes in a single count). *See also United States v. Davis*, 471 F.3d 783, 785 (7th Cir. 2006) (holding that an indictment alleging a scheme to commit health care fraud through various methods was not duplicitous). Moreover, there is no danger here of a verdict not being

21

unanimous due to duplicity ─ Khan and Chaudhry are charged with a conspiracy to commit money laundering and a verdict of guilty means that the jury found that they committed money laundering of the proceeds of *some* illegal activity, but there need not be a verdict as to which illegal activity generated the proceeds, particularly where, as here, the proceeds are mixed and one and the same. *See Han, supra.*

As defendant acknowledges, for the purpose of analyzing a motion to dismiss, the allegations are taken as true and viewed in a light most favorable to the Government. *United States v. Clark*, 728 F.3d 622, 623 (7th Cir. 2013). While each individual played a different role in the wire fraud scheme and the money laundering conspiracy, and certain individuals worked more closely with each other than others, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997); *see also United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009). The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003). A defendant joins a conspiracy if he agrees with another person to one or more of the common objectives of the conspiracy; it is immaterial whether the defendant knows, has met, or has agreed with every co-conspirator. *Longstreet*, 567 F.3d at 652. Nothing on the face of Count Nineteen suggests that the charged money laundering conspiracy actually consists of "multiple conspiracies" that would support a motion to dismiss on duplicity grounds or that

would give rise to a prejudicial variance at trial. For all of the foregoing reasons, defendants' motion to dismiss Count Nineteen as duplicitous should be denied.

### C. <u>Defendant's Motion for A Bill of Particulars Should be Denied</u>

Defendants each seek a bill of particulars with regard to the money laundering count.[7] The government has produced the banking records that show the transactions that constitute money laundering, and defendants do not claim otherwise. Defendants' requests for a bill of particulars appear to be based on the fact that discovery is voluminous. As described below, defendants have not established grounds for a bill of particulars, and the Indictment more than adequately apprises defendants of the nature of the money laundering charges against each.

The Court's central inquiry in response to a request for a bill of particulars is whether the indictment adequately apprises each defendant "of the charges against him in order to enable adequate trial preparation." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013). "A bill of particulars is 'unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense.'" *Id.* at 927 (quoting *United*

---

[7] Federal Rule of Criminal Procedure 7(f) permits defendants to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." Defendants have not asked for permission to file a bill of particulars seven months after arraignment, and have stated no reason to justify the late request. Regardless of timing, the motion should be denied because defendants do not meet the standard for a bill of particulars, for the reasons set forth herein.

*States v. Hernandez,* 330 F.3d 964, 975 (7th Cir. 2003), *overruled on other grounds by Alleyne v. United States,* 570 U.S. 99 (2013)). An indictment that includes each element of the charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the applicable statutes generally is sufficient by law. *Blanchard*, 542 F.3d at 1140; *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). Here, the Indictment meets those requirements. Defendants do not claim that the indictment itself lacks sufficient specificity as to the criminal charges, and indeed the pretrial motions show that defendants understand the charges very clearly.

Further, apart from the notice given in the indictment, a bill of particulars is unnecessary when the information defendant seeks is "available through 'some other satisfactory form,' such as discovery." *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008) (quoting *Hernandez*, 330 F.3d at 975); *United States v. Burke*, 2022 WL 1970189, at *82 (N.D. Ill. June 6, 2022) (denying request for a bill of particulars when, *inter alia*, "[d]iscovery fleshes out the details of the Government's case and therefore equips him with information he needs to mount a defense"). Defendants admit that the government has produced the banking records that contain the money laundering transactions. Khan Motion in Support of Pretrial Motions, Dkt. 70, p. 24. That is sufficient. Defendants instead claim that discovery is voluminous, and therefore they are entitled to a bill of particulars so that they do not have to sift through discovery on their own. *Id*. at p. 24. Voluminous discovery does not support a bill of particulars. *United States v. Williams*, 2017 WL 1437199, at *1-

24

2 (E.D. Wis. April 24, 2017), *citing United States v. Canino*, 949 F.2d 928 (7th Cir. 1991). Moreover, defendants have knowledge of the bank accounts that they opened, that bore their own names and from which they transferred money to Ahmed, as charged in the Indictment, and they are not entitled to have the government to walk them through the bank records.

Criminal Rule of Procedure 7(f) is not a discovery device of the kind propounded in a civil case, and defendants are not entitled to a mock trial preview of the government's evidence. *Fassnacht*, 332 F.3d at 445 ("the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved") (quoting *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)); *Blanchard*, 542 F.3d at 1141. To that end, the government will produce its witness and exhibit lists pursuant to the pretrial schedule set by the Court.

Where, as here, the Indictment, together with discovery, adequately inform defendants of the charges, a bill of particulars is not warranted. In *Blanchard*, for instance, the Seventh Circuit affirmed the district court's denial of a motion for a bill of particulars in a case charging the manufacture of methamphetamine and possessing a firearm as a convicted felon, observing, "[g]iven knowledge of the evidence seized from both residences and the terms of the indictment, Blanchard was undoubtedly aware that the government might seek to prove that he manufactured methamphetamine at either residence and that he possessed firearms at the Roberts

residence on a date approximating the 'on or about' date alleged in the indictment. This was more than sufficient to enable Blanchard to prepare for trial." 542 F.3d at 1141. *Compare Vaughn*, 722 F.3d at 926 (holding that an indictment charging drug conspiracy is adequate "if it sets forth the existence of a drug conspiracy, the operative time of the conspiracy, and the statute violated"); *United States v. Gregory*, 2003 WL 21698447 at *1 (N.D. Ill. July 1, 2003) (Reinhard, J.) (bill of particulars was not required for an indictment charging narcotics possession and unlawfully possessing a firearm; "as it stands, the indictment alleges the specific dates involved, the types of weapon and their serial numbers, and most importantly, all of the necessary elements of the respective offenses charged"); *United States v. Mebust*, 1993 WL 499706 at *3 (N.D. Ill. Dec. 2, 1993) (Williams, J.) (bill of particulars not required for indictment charging the unlawful possession of firearms when the indictment "clearly identifies the statute Mebust is charged with violating, contains the elements of the charge, identifies the specific weapons involved in each count, and alleges that Mebust was in possession of the illegal firearms 'on or about' June 18, 1993, at Round Lake Heights, Illinois). Defendants' Motion for a Bill of Particulars should be denied.

## D. **Defendants' Motions for *Brady* Material and Its Progeny Are Moot.**

Defendants have filed a motion seeking all disclosures required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The government has acknowledged its obligations at the initial appearance and continues to acknowledge

its ongoing obligations.  A pretrial motion seeking such disclosures is not necessary — where the government acknowledges its disclosure obligations, such a pretrial motion is moot.  *United States v. Sims*, 808 F. Supp. at 614-15 (where the defendants each filed motions to produce evidence favorable to the defendant or *Brady* material, the court denied the motion as moot "since the government has indicated that it is aware of its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).").

Here, the government has produced thousands of pages of documents to defendants.  If there is any *Brady* material in the government's possession, the government already has produced it to defendants. The government agrees to produce any exculpatory information that comes into its possession — the government will examine any additional material it has received and if it is *Brady* material, the government will produce it to defendant. Defendants have not pointed to any material withheld by the government. As for materials required under *United States v. Giglio*, relating to witnesses, that request is premature. The government will determine the witnesses it will call and determine if any *Giglio* material exists for such witnesses and produce any such material prior to trial. In light of the government's position, defendants' motions are moot and should be denied.

**E. Defendant's Motions for Early Return of Trial Subpoenas Is Unopposed, Subject to Federal Rule of Criminal Procedure 17.**

The government agrees with the motion for early return of trial subpoenas. As per Federal Rule of Criminal Procedure Rule 17, the government requests that any order entered by the Court require the issuing party to produce a copy of any subpoena return to the other parties promptly after receipt.

WHEREFORE, the government respectfully moves this Court to deny defendants' pretrial motions for severance and to strike and to dismiss for duplicity and deem defendants' motions for *Brady* disclosures and its progeny moot, for the reasons set forth herein.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  /s/ *Sheri H. Mecklenburg*
SHERI H. MECKLENBURG
KELLY GUZMAN
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300