**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 CR 321 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| MAHMOOD SAMI KHAN, | ) | |
| aka "SAMI," and | ) | |
| SUHAIB AHMAD CHAUDHRY, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANT KHAN'S MOTION TO DISMISS WITH PREJUDICE OR IN THE
ALTERNATIVE, FOR AN EVIDENTIARY HEARING BASED UPON
PROSECUTORIAL MISCONDUCT IN THE GRAND JURY</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

FACTUAL BASIS ...........................................................................................................7

    A. The Broadview Six Case — Misconduct Is Uncovered ...............................8

    B. Fallout and Impact on the Present Case.......................................................9

LEGAL PRINCIPLES AND ANALYSIS.......................................................................10

    I. There Was Flagrant and Pervasive Misconduct Before the Grand Jury .................10

        A. A Fair Grand Jury Process Protects Individuals Against Government Abuses of Power ......................................................................................................10

        B. The Prosecutor's Misconduct in This Case Was Undeniable and Pervasive .12

        C. Numerous Instances of Misconduct Occurred Throughout the Entire Process ..................................................................................................................13

    II. The Pervasive and Flagrant Misconduct Warrants Dismissal with Prejudice ......15

        A. Khan Has Suffered Significant Prejudice as a Result of the Misconduct .......15

        B. Khan's Right to a Speedy Trial Has Been Corrupted .........................................17

        C. This Court May Dismiss the Indictment with Prejudice as a Sanction...........19

        D. The Misconduct May Be Part of a Pattern in This District and With AUSA A in Particular .......................................................................................................23

        E. The Government's Anticipated Superseding Indictment Does Not Cure the Misconduct or Mitigate the Prejudice.......................................................................26

III. Dismissal of the Indictment Does Not Produce a Windfall for Khan .........................29

IV. In the Alternative, the Court Should Conduct an Evidentiary Hearing and Order Production of Communications.............................................................................................31

CONCLUSION ................................................................................................................33

**TABLE OF AUTHORITIES**

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ...........................................................23

*Barker v. Wingo*, 407 U.S. 514 (1972) ...........................................................................................17

*Berger v. United States*, 295 U.S. 78 (1935)...............................................................................11,12

*Doggett v. United States*, 505 U.S. 647 (1992) .............................................................................17

*United States v. Abbott Laboratories*, 369 F. Supp. 1396 (E.D.N.C. 1973)................................12

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) .......................................................... passim

*United States v. Breslin*, 916 F. Supp. 438 (E.D. Pa. 1996)...................................................... 12-13

*United States v. Brito*, 907 F.2d 392 (2d Cir. 1990).......................................................................22

*United States v. Cerullo*, 2007 WL 2462111 (S.D. Cal. Aug. 28, 2007) .....................................13

*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) ...........................................................22

*United States v. Colucci*, No. 22 CR 269 (N.D. Ill.).....................................................................25

*United States v. DiGrazia*, 213 F. Supp. 232 (N.D. Ill. 1963) .................................................11,12

*United States v. Dionisio*, 410 U.S. 1 (1973).................................................................................10

*United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972) .................................................................13

*United States v. Felton*, 755 F. Supp. 72 (S.D.N.Y. 1991)............................................................22

*United States v. Filer*, No. 19 CR 565 (N.D. Ill. Feb. 21, 2024)............................................ 25-26

*United States v. Gold*, 470 F. Supp. 1336 (N.D. Ill. 1979) ...................................................... 11-12

*United States v. Hodge*, 496 F.2d 87 (5th Cir. 1974) ....................................................................12

*United States v. Hogan*, 712 F.2d 757 (2d Cir. 1983) ...................................................................12

*United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485 (W.D.N.Y. May 22, 2006)........12

*United States v. Linder*, 2013 WL 812382 (N.D. Ill. 2013)..........................................................19

*United States v. Mechanik*, 475 U.S. 66 (1986)............................................................................20

*United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021)..................................................................22

*United States v. Pinto*, 708 F.2d 523 (10th Cir. 1983) ..............................................................26, 30

*United States v. Robinson*, 485 U.S. 25 (1988) .............................................................................12

iii

*United States v. Samango,* 607 F.2d 877 (9th Cir. 1979) .......................................................13, 19

*United States v. Serubo,* 604 F.2d 807 (3d Cir. 1979) .......................................................... passim

*United States v. Slough,* 679 F. Supp. 2d 55 (D.D.C. 2010) ......................................................20

*United States v. Smith*, 2022 WL 1053263 (S.D.N.Y. 2022) .....................................................22

*United States v. Stein*, 541 F.3d 130 (2d Cir. 2008).............................................................22–23

*United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011) ...................................................13

*United States v. Udziela*, 671 F.2d 995 (7th Cir. 1982) ............................................................13

*United States v. Walters*, 910 F.3d 11 (2d Cir. 2018) ...............................................................22

*United States v. Williams*, 504 U.S. 36 (1992)...........................................................................10

*United States v. Young*, 470 U.S. 1 (1985)..................................................................................12

*Williams v. United States*, 757 A.2d 100 (D.C. 2000)...............................................................12

Constitutional Provisions

U.S. Const. Amend. V............................................................................................... passim

U.S. Const. Amend. VI ................................................................................................17

**Statutes and Rules**

18 U.S.C. § 3161 (Speedy Trial Act) ...........................................................................17

Fed. R. Crim. P. 6(e)(1) & Advisory Committee Notes to 1979 Amendments.......12, 14, 24

**Other Authorities**

U.S. Attorneys' Manual 9-11.010 (2020)..................................................................11

Section 3.5(b) of the Standards, The Prosecution Function, adopted by the American Bar Association (1971) .............................................................................................12

Defendant MAHMOOD SAMI KHAN, by and through his attorneys, requests the Court to dismiss the indictment with prejudice, or in the alternative, conduct an evidentiary hearing.

Counsel recognizes the importance of secrecy in the grand jury process. It protects the innocent, the investigated but not charged, the witnesses, and perhaps most importantly the grand jurors themselves. But the process grants an incredible amount of discretion and, frankly, authority to the prosecutors. They get to act in secrecy too, and when they abuse that privilege, it undercuts justice not only in the case at hand but the system itself.

This case is a stark example of a prosecutor relying on secrecy to abuse government power and the devastating impact on those publicly accused. This abuse of trust, described in detail below, requires one sanction – dismissal with prejudice. Respect for the criminal justice system depends on it.

## INTRODUCTION

On June 12, 2025, after Assistant United States Attorney A convinced grand jurors to return an indictment, Mahmood Sami Khan (Khan) was arrested in his home in Texas and detained pending appearance before a judge. (Dkts. 1, 21) The arrest and detention occurred despite Khan having learned of the investigation two years earlier, despite undersigned counsel having worked with the government to respond to subpoena requests, to meet with AUSA A to help to explain Khan's role in the Anosh

1

Ahmed organization, to identify exculpatory evidence (alerting AUSA A to communications establishing that Khan did not know the work he was doing was being fraudulently billed), and despite there being no indication that Khan was either a flight risk or a danger to the community. (Dkt. 21) Without providing any prior notice of the arrest, AUSA A threatened to delay a detention hearing over a holiday weekend (for six days), unless Khan agreed to certain unreasonable conditions of release — which he did to secure his release.[1] *Id*. At the first opportunity, Khan petitioned the court to amend those conditions of release — that request was granted. (Dkt. 29).[2]

Upon the first appearance before the district court, Khan indicated that he intended to seek a trial date as soon as was practical with all parties' schedules. (Dkt. 50) Khan always maintained that position. In October 2025, the parties set a trial for July 9, 2026. (Dkt. 58) Khan has continuously objected to the government's suggestion that it would seek to move that date based on co-defendant Anosh's extradition — a request which was denied by the Court. The Court indicated that Mr. Ahmed's presence was not guaranteed, his arrival date could not be predicted, and that the Court's schedule was full and did not provide an opportunity for a later trial. (Dkt. 80).[3]

---

[1] The conditions included electronic monitoring bracelet, tendering his bank records, indirect contact with individuals associated with the case, and prohibition on obtaining employment with any entity that receives federal funds, not incur any new debt, and be subject to regular credit checks.

[2] The Court released Khan from electronic monitoring, did not require him to tender his bank records, did not prohibit him from employment with any entity that receives federal funds, did not prohibit him from incurring new debt and did not subject him to regular credit checks.

[3] Khan did not order the transcript for this appearance and provides this information based upon attorney notes.

Khan has spent extensive time and resources preparing for the upcoming July trial (motions in limine are due this week). In addition, Khan has aggressively raised concerns that the indictment was confusing and did not clearly indicate the grand jury's determination as to Khan's alleged criminal involvement. (Dkts. 68, 78). Khan has continuously taken the position that there is no evidence linking Khan to an earlier scheme charged in the indictment related to O'Hare Clinic Laboratory (OCL) and sought severance from those related counts and the facts associated, as well as dismissal of count 19 for duplicity and due to its failure to state an offense. (Dkts. 68, 78 ("The government's Response raises more questions than it answers, so supplementing the initial motions, Khan moves to dismiss Count 19, for failure to state an offense…") Khan was worried about the confusion regarding the grand jury's determination of the offenses charged. The government has continually dismissed Khan's position, representing to the Court that it has gone above and beyond to inform Khan of the evidence supporting the grand jury's decision to indict.

Meanwhile, unbeknownst to the defense and this Court, but known at least to AUSA A, who responded to the motions and was seeking the trial continuance, there was grand jury misconduct lurking in the background. It was recently discovered that AUSA A engaged in blatant, repeated misconduct before the grand jury in the Broadview Six matter. After the misconduct came to public light, the government advised undersigned defense counsel that they decided to conduct a review of AUSA

3

A's other cases before the grand jury (at some prior point). The grand jury that returned the indictment in the Broadview Six case is the same grand jury that heard Khan's case. The government further provided that it would tender what appears to be all grand jury transcript colloquies to defense counsel from Khan's case, and it intends to seek a superseding indictment and a continuance of the trial date. These issues and the government's position on them were only revealed to the defense for the first time on May 22, 2026 — one day after Judge Perry found "incredibly shock[ing]" conduct in the grand jury by this same AUSA before the same grand jury in this case in the now infamous Broadview Six prosecution. The government's solution in the Broadview Six case was to initially dismiss the felony indictment with prejudice, to avoid any further inquiry into the conduct before the grand jury, and then later dismiss the superseding misdemeanor information with prejudice. Here, even if involuntarily, the government must face the same fallout in this case.

This last-minute development has caused Khan significant prejudice — he has been charged, arrested, his liberty curtailed, suffered reputational damage, expended extensive time and resources to prepare for trial, and lived under the heavy weight and consequences of a federal indictment and trial. Khan has unsuccessfully litigated motions to sever and dismiss that would have been warranted had the full grand jury process been revealed, and the Court was not restricted by the secrecy of the process. The government has received every benefit, to date, from a presumption of regularity

4

that was clearly unearned because we now know that the process was infected with misconduct.

The government must not be permitted to engage in grand jury misconduct, conceal its obstruction of the grand jury process, and then suffer no consequences, as it attempted to do in the Broadview Six case (submitting a redacted version of the grand jury transcript to the court concealing the misconduct). Of course, a primary question here is why the defense and the Court are only learning about the grand jury misconduct in this case now as trial rapidly approaches and Motions in Limine and Pretrial Order documents are due, when it appears the government was on notice much earlier. Nevertheless, notice of even the potential for misconduct came to the defense late. This is so, despite the fact that there is reason to believe that the United States Attorney's Office for the Northern District of Illinois was aware of allegations related to AUSA A at least several months ago, when the defense in the Broadview Six case began pushing for disclosures. Moreover, the grand jury transcripts in this case reveal that other members of the prosecution team were present when some of the misconduct occurred (during the grand jury process). And, according to public reporting, another AUSA was aware of the misconduct during the Broadview Six presentation of evidence to the grand jury as it happened, thus putting the U.S. Attorney's Office on notice of potential misconduct related to AUSA A at that time. In addition, the U.S. Attorney himself learned of AUSA A's misconduct in the Broadview Six case at the time the

5

government indicated it would supersede the felony charges — April 29, 2026. See

https://chicago.suntimes.com/crime/2026/05/22/broadview-six-federal-prosecutors-

misconduct-tainted-cases-reviewed; (25 CR 693, Dkt. 139). Still, the government in this

case never made mention of any concern, any review or investigation, until after Judge

Perry made her fateful findings and summoned prosecutors and supervisors to court.

Focusing solely on this case, AUSA A's misconduct is flagrant and pervasive.

The grand jury presentation began with a shocking instance of vouching —

The misconduct continued from there over the course of many months and

many witnesses. It appears that the U.S. Attorney's Office was on notice of problems

with AUSA A long before it alerted defense counsel but failed to take proactive action.

Instead, it continued to defend its indictment in this case in pretrial filings and

argument.

On the record set forth and discussed herein, the Court should dismiss the

indictment against Khan with prejudice. In the alternative, to the extent the Court needs

additional evidence of repeated, pervasive misconduct in the grand jury, as well as the

United States Attorney's Office's knowledge of misconduct and misconduct particularly

associated with AUSA A, the Court should order disclosure of all internal

communications related to AUSA A's misconduct and any efforts to cure or conceal that

misconduct. The Court should also conduct an evidentiary hearing which would permit

6

defense counsel to call witnesses who can testify as to who knew what and when they came to know it.

The grand jury process is sacred. It depends on honor. There has been no honor here. In light of repeated, pervasive misconduct, and as a sanction, and to curtail further abuses of power, Khan respectfully moves for dismissal of the Indictment with prejudice.

## FACTUAL BASIS

The issue raised in this motion revolves around AUSA A and three grand jury investigations. First, AUSA A opened a grand jury investigation into practices at Loretto Hospital related to Anosh Ahmed sometime in 2022. That grand jury returned a true bill and an indictment was filed on October 23, 2024. *United States v. Ahmed*, et al., 24-CR-232 (Dkt. 39) (N.D. Ill.) (Gettleman, J.). Second, sometime in the summer of 2023, AUSA A opened a grand jury investigation into COVID-19 testing run by Anosh Ahmed in Chicago and other states. That grand jury returned a true bill and an indictment was filed on June 12, 2025, before this Court. *United States v. Ahmed*, et al., 25-CR-321 (Dkt. 1) (N.D. Ill.) (Coleman, J.). On or about September 23, 2025, AUSA A opened a grand jury investigation into citizens who protested the treatment of undocumented individuals by ICE. That grand jury returned a true bill and an indictment was filed on October 23, 2025. *United States v. Rabbitt*, et al., 25-CR-693 (Dkt. 1) (N.D. Ill.) (Perry, J.).

### A. The Broadview Six Case — Misconduct Is Uncovered.

On March 13, 2026, the defendants in *United States v. Rabbitt* filed a motion to compel any discovery relating to "any improper influence exerted upon the United States Attorney's Office" which led to the prosecution of the defendants. *Rabbitt*, 25-CR-693 (Dkt. 94). Although government counsel later denied any claim of vindictive prosecution, after uncovering the "shocking" conduct before the grand jury Judge Perry stated, "…none of us know what we don't know and none of us knew about this [the later discovered prosecutorial misconduct] at this time." On April 8, 2026, the *Rabbitt* defendants moved to compel the disclosure of the grand jury transcripts, or in the alternative for the court to conduct an *in camera* review. (Att. A, p. 19.) In related motions, the defendants advised the court that they had been raising concerns regarding the grand jury process since December 2025. *United States v. Rabbitt*, 25-CR-693 (Dkt. 188, p. 2).

On April 23, 2026, the government tendered certain grand jury transcripts for the court's review *in camera*. (Att. A, p. 20.) However, portions of the transcripts were redacted. Upon learning of the redacted portions, the defendants requested the court review the unredacted portions. The court then ordered the government to tender unredacted transcripts. (Att. A, p. 20.) In response, the government dismissed the felony counts against all defendants and brought an information for misdemeanor charges against all the defendants. (Att. A, p. 20.) The defendants, however, persisted. (Att. A, p.

21.) And, on May 18, 2026, they requested that the government tender the unredacted transcripts. (Att. A, p. 21.) The Government complied on May 19, 2026, and on May 20, 2026 the court ordered a sealed hearing for May 21, 2026 to discuss the matter, which has since been unsealed. (Att. A, pp. 1–20; Dkt. 186.)

At that hearing, Judge Perry revealed that AUSA A had engaged in shocking conduct before the grand jury by improperly vouching for either evidence or witnesses, by dismissing dissenting grand jurors, and by conducting ex parte communications with grand jurors. (Att. A, pp. 22–23.) The court further expressed great concern over the U.S. Attorney's Office's decision to redact portions of the grand jury transcripts to cover up the misconduct that was present. *Id*. In addition, during the hearing it was revealed that another AUSA, aside from AUSA A, was present in the grand jury when misconduct occurred – suggesting others were aware of AUSA A's tactics. (Att. A, p. 31.)

### B. *Fallout and Impact on the Present Case*

On May 22, 2026, a day after Judge Perry made her findings, the government met with undersigned counsel in a Teams meeting and disclosed that the grand jury in the *Rabbitt* case was the same grand jury as the above captioned case. The government further advised there may be an issue in the present case where AUSA A also vouched for witnesses or evidence, but qualified that it would be up to defense counsel to decide. The government indicated it would tender all transcripts to defense counsel and that it,

in an abundance of caution, planned to seek a superseding indictment in the matter to attempt to cure any potential taint associated with AUSA A's conduct.

Given this turn of events, and after an immediate review of the grand jury proceedings and all related filings, Defendant Khan respectfully requests the indictment against him be dismissed, with prejudice, for three reasons: (1) because the grand jury misconduct is part of a pattern of misconduct that is widespread and continuous, continuing over at least two cases that are now known, (2) as a sanction for AUSA A's misconduct and the United States Attorney's Office's failure to timely disclose that misconduct to the Court and the defense; and (3) because AUSA A's misconduct and the United States Attorney's Office's efforts to cure that misconduct have prejudiced Khan in ways that cannot be cured and for which the government should not obtain an advantage.

## LEGAL PRINCIPLES AND ANALYSIS

### I. There Was Flagrant and Pervasive Misconduct Before the Grand Jury.

*A. A Fair Grand Jury Process Protects Individuals Against Government Abuses of Power.*

The Fifth Amendment mandates that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. AMEND. V. The Fifth Amendment "presupposes an investigative body acting independently of either prosecuting attorney or judge." *United States v. Williams*, 504 U.S. 36, 49 (1992). The grand jury accordingly "must be free to pursue its

10

investigations [and return true bills] unhindered by external influence or supervision."

*United States v. Dionisio*, 410 U.S. 1, 17 (1973).

Policing that principle, however, is difficult because the grand jury sits in secret, with no judge in the room, no defense advocate, and no contemporaneous check on the prosecutor (aside from other prosecutors). As the Third Circuit explained:

> [T]he prosecutor operates without the check of a judge or a trained legal adversary, and virtually immune from public scrutiny. The prosecutor's abuse of his special relationship to the grand jury poses an enormous risk to defendants as well. For while in theory a trial provides the defendant with a full opportunity to contest and disprove the charges against him, in practice, the handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

*United States v. Serubo*, 604 F.2d 807, 817 (3d Cir. 1979).

Grand jury secrecy requires prosecutors to act with the utmost of integrity, honor and decorum. A prosecutor is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935). Her duty, her obligation, before the grand jury is to "be scrupulously fair to all witnesses" and "not to inflame or otherwise improperly influence the jurors," "to preserve fairness, impartiality and lack of bias," and to never "act in a way that overlooks inherent prejudice to the person under criminal investigation." *United States*

11

*v. DiGrazia*, 213 F. Supp. 232, 235 (N.D. Ill. 1963); *United States v. Gold,* 470 F. Supp. 1336, 1346 (N.D. Ill. 1979) (J.Leighton). *See also* U.S. Attorneys' Manual 9-11.010. Due to the secrecy of the proceedings, when these standards are breached and misconduct occurs, it is particularly devastating to the criminal justice system. Yet it happened here.

### B. The Prosecutor's Misconduct in This Case Was Undeniable and Pervasive.

Misconduct is rooted in tactics aimed at manipulating an indictment. A "prosecutor should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury." *United States v. Gold*, 470 F. Supp. at 1351 (quoting Section 3.5(b) of the Standards, The Prosecution Function, adopted by the American Bar Association (1971)). Such tactics involve expressing personal opinions regarding the guilt of the accused (*United States v. Young*, 470 U.S. 1, 18 (1985)); vouching for the credibility of witnesses (*United States v. Robinson*, 485 U.S. 25, 33 n.5 (1988)); suggestion, insinuation, and assertions of personal knowledge about the accused (*Berger v. United States*, 295 U.S. at 88); presenting informal, unsworn testimony (*United States v. Hodge*, 496 F.2d 87, 88 (5th Cir. 1974); *United States v. Leepe*r, No. 06-CR-58A, 2006 WL 1455485, at *3 n.2 (W.D.N.Y. May 22, 2006)); offering "expert" type testimony regarding what is "typical" in a particular case (*Williams v. United States*, 757 A.2d 100, 106 (D.C. 2000)); inflaming the passions of the grand jurors (*DiGrazia*, 213 F. Supp. at 235; *United States v. Abbott Laboratories*, 369 F. Supp. 1396 (E.D.N.C. 1973)); depicting the accused as a bad person (*United States v.*

12

*Hogan*, 712 F.2d 757, 761 (2d Cir. 1983)); developing an unnatural rapport with the grand jurors that leads to dependencies and risks manipulation (Fed. R. Crim. P. 6(e)(1), Advisory Committee Notes to 1979 Amendments; *United States v. Breslin*, 916 F. Supp. 438, 443 (E.D. Pa. 1996)); and misleading legal instructions and mischaracterizations of the facts (*United States v. Udziela*, 671 F.2d 995, 998 (7th Cir. 1982); *United States v. Cerullo*, 2007 WL 2462111, at *2 (S.D. Cal. Aug. 28, 2007); *United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011) (dismissal warranted where prosecutor's erroneous instructions "[go] to the heart of the intent required to indict"); *United States v. Estepa*, 471 F.2d 1132, 1136-37 (2d Cir. 1972)). This particular grand jury proceeding is rare because each and every one of these instances of misconduct occurred. The cumulative effect of them is to render the process unconstitutional and dismissal of the indictment mandatory. *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979).

### C. *Numerous Instances of Misconduct Occurred Throughout the Entire Process.*

The defense's best effort to catalog specific statements at issue, with date, and internal transcript page is attached hereto as Attachment B[4]. A PDF of the combined grand jury transcript, will be submitted to the court *in camera* under separate cover as Attachment C.

---

[4] Defense counsel received 900 pages of transcripts last Friday evening. Due to the looming trial date, counsel sought to review all the transcripts, conduct the analysis provided herein, do necessary legal research and draft this motion within a few days, because this matter must be reserved before the pending trial date. There may be issues that defense counsel missed given the timeframe for which the work was completed, and may seek leave of the court to supplement this motion in the future.

Eight distinct categories of misconduct reoccur throughout the proceedings. Considered collectively, they obliterated the grand jury's independent functioning and the integrity of the process via: (1) repeated personal vouching for witnesses and the strength of the government's case; (2) treatment of the indictment as a foregone conclusion and assurances about post-indictment events; (3) inflammatory characterizations of the defendants, including name-calling and folk-wisdom metaphors; (4) disclosure of extra-record information including off-the-record negotiations with a subject's counsel; (5) familiarity and rapport-building with the grand jurors that compromised their independent role; (6) disclosure of related charging decisions, including the flight of one subject to Dubai and the prosecution of another in a related matter; (7) mischaracterizations of legal principles upon which the undersigned defendants were ultimately indicted; and (8) mischaracterization of evidence specific to the undersigned defendant in a way that compromises the integrity of the evidence.

The Advisory Committee on the Federal Rules has warned that "[a] sophisticated prosecutor must acknowledge that there develops between a grand jury and the prosecutor with whom the jury is closeted a rapport — a dependency relationship — which can easily be turned into an instrument of influence on grand jury deliberations." Fed. R. Crim. P. 6(e)(1), Advisory Committee Notes to 1979 Amendments. That dynamic was allowed to develop and entrench itself unchecked over the many months the grand

14

jury met; and for which at least some members of the U.S. Attorney's office were aware during the seven months of pre-trial proceedings in this case.

## II. The Pervasive and Flagrant Misconduct and the Significant Prejudice to Khan Warrants Dismissal of the Indictment, with Prejudice.

### A. Khan Has Suffered Significant Prejudice as a Result of the Misconduct.

The Third Circuit's warning in *Serubo* captures the prejudice Khan has already suffered:

> [T]he handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo. Where the potential for abuse is so great, and the consequences of a mistaken indictment so serious, the ethical responsibilities of the prosecutor, and the obligation of the judiciary to protect against even the appearance of unfairness, are correspondingly heightened.

*Serubo*, 604 F.2d at 817.

Khan has lived the prejudice the Third Circuit described. He was arrested in his home in Texas, held in jail, and then released only after the government threatened to delay his detention hearing across a six-day holiday weekend unless Khan agreed to unreasonable conditions of release. (Dkt. 21.) Khan has now lived under the weight of a federal indictment for nearly a year, with the attendant reputational, financial, and personal consequences that follow from being publicly accused of multi-million-dollar healthcare fraud. Khan and his counsel have devoted extraordinary time and resources to preparing for the July 9, 2026, trial date, including motions in limine that are due this week, aggressive litigation over the OCL counts, and a full pretrial work-up.

15

Each of those harms was suffered by Khan in reliance on an indictment that, by the government's own current admission, was tainted by misconduct so significant that the U.S. Attorney's Office now proposes to supersede it. None of that harm can be undone by a later superseding indictment; "a later dismissal or acquittal can never undo" the impact of the indictment that was actually returned. *Id*. The misconduct cataloged in Attachment B is not abstract — it is the engine of every step of the prosecution to date, including the arrest, the conditions of release, the asserted urgency that drove Khan's detention posture, and the position taken with respect to defense counsel's request to sever and dismiss; in addition to defending the OCL allegations to which Khan has had to devote months of trial preparation.

Khan has also been prejudiced by the timing and manner of the government's disclosure. Counsel was advised that the government ordered the grand jury colloquy transcripts some time ago, in other words, it was aware of the potential misconduct but, it did not advise Khan or the Court of any potential concern, any proposed review, or any investigation until May 22, 2026 — the day after Judge Perry's findings in the Broadview Six case. By that point, pretrial preparation for the July 9 trial was at full sprint, motions *in limine* were due, and the trial date was a few weeks away. The parties had appeared before the Court in this matter for status hearing on March 31, 2026 and April 23, 2026 (the same day the government submitted redacted grand jury transcripts to Judge Perry). Khan was denied the opportunity to litigate the misconduct from a

16

posture in which the trial calendar permitted a full and orderly evidentiary inquiry. As discussed below, the resulting prejudice extends to Khan's Sixth Amendment right to a speedy trial, see infra Section II.B, and to his ability to defend against a now-pending superseding indictment that the government has signaled is forthcoming, see infra Section II.E.

### B. Khan's Right to a Speedy Trial Has Been Corrupted.

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Speedy Trial Act, 18 U.S.C. § 3161 et seq., implements that guarantee with a statutory framework. And in evaluating constitutional speedy trial claims, courts weigh (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Each *Barker* factor cuts in Khan's favor. *First*, the length. Khan was arrested on June 12, 2025, more than eleven months ago. The trial is currently set for July 9, 2026. The government, by its own admission as of May 22, 2026, intends to seek a continuance to accommodate a superseding indictment. A continuance of even a few months would be prejudicial to Khan under these circumstances. *See Doggett v. United States*, 505 U.S. 647, 651–52 (1992).

17

*Second*, the reason. The delay is occasioned entirely by the government's misconduct and its delayed disclosure of that misconduct. There is no legitimate prosecutorial reason for the continuance the government now contemplates. The misconduct itself was the government's own; the cover-up (the redacted Broadview Six transcripts; the failure to disclose the parallel review of this case) was the government's own; and the eleventh-hour disclosure (one day after Judge Perry's findings, weeks before trial) was the government's own. None of those choices belongs on the Khan side of the continuance ledger.

*Third*, the assertion. From the first appearance, Khan has insisted on a prompt trial from the jump. He clearly and consistently communicated his desire to proceed to trial at the earliest possible point. He fought the government's continuance request based on co-defendant Ahmed's extradition. He has aggressively prepared. He continues to assert his speedy trial right by this motion.

*Fourth*, the prejudice. Khan has been under indictment, with conditions of release, for nearly a year. He has expended significant resources preparing for the July 9 trial. He has lived under the public stigma of a federal fraud indictment. Each additional month of delay — occasioned solely by misconduct the government concealed — adds to that prejudice. And the prejudice is structural: Khan's ability to mount his defense against the OCL counts, against which he has aggressively sought severance, is impaired by the prospect of a moving-target indictment built on a tainted

18

grand jury record. Moreover, the government, at the very least, has put Khan in the untenable position, should the Court not grant a motion to dismiss with prejudice, Khan must proceed to trial on an unconstitutional indictment or continue to suffer the pains of waiting and preparing for a trial on the government's timeline.

The misconduct compounded itself in two stages. First, the misconduct occurred in the grand jury, where AUSA A vouched, fenced, mischaracterized, and inflamed. Second, the government concealed its investigation of that misconduct from the defense and the Court, while continuing to litigate this case as though no concern existed. Each stage delayed Khan's trial, the second stage solely so that the government could attempt a superseding indictment without consequence. Dismissal with prejudice is the only remedy that adequately addresses both stages.

### C. This Court May Dismiss the Indictment with Prejudice as a Sanction.

This Court clearly has the authority to dismiss the Indictment based on prosecutorial misconduct in the grand jury. As Chief Judge Kendall explained when dismissing an Indictment based on the prosecution's interference with the defendant's right to present a defense, the Court's supervisory authority provides ample authority to dismiss in order to curb misconduct:

> "The Court may dismiss an indictment on other grounds pursuant to its supervisory powers, such as when the government exhibits outrageous misconduct in prosecuting the indictment, causing prejudice to the defendant; such a dismissal is a prophylactic tool used to discourage future deliberate governmental impropriety." *See United States v. Derrick*, 163 F.3d

19

799, 807 (4th Cir.1998) ("[A] court's supervisory power cannot be exercised to dismiss indictments for government misconduct absent a showing of prejudice to the defendants."); *United States v. Samango*, 607 F.2d 877, 884 (9th Cir.1979) (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.1978)) (internal quotation marks omitted) ("Under its inherent supervisory powers, a federal court is empowered to dismiss an indictment on the basis of governmental misconduct.")

*United States v. Linder*, 2013 WL 812382, at *30 (N.D. Ill. 2013)

Here, the government has already indicated that it intends to seek a superseding indictment. Therefore, the defense seeks dismissal of the Indictment with prejudice.

The defense acknowledges that a dismissal with prejudice for misconduct in the grand jury is not the typical remedy. *See United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (collecting cases). But this is not a typical case. The record already demonstrates repeated misconduct across multiple cases, and the production of documents requested herein, together with an evidentiary hearing requiring testimony from individuals in the U.S. Attorney's Office, including AUSA A, may well reveal more.

To avoid a dismissal with prejudice in grand jury misconduct cases, the government often relies on the Supreme Court's explanation in *Bank of Nova Scotia* that a dismissal is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57 (1988) (adopting the standard from Justice

20

O'Connor's concurrence in *United States v. Mechanik*, 475 U.S. 66 (1986)). The government then argues that a superseding indictment, presumably absent misconduct, cures any 'substantial influence' or 'grave doubt' concerns.

Here, for reasons argued above, the defendant has suffered significant prejudice. To recap briefly, he was arrested without need, subjected to detention needlessly, and has suffered all of the other prejudice that a federal indictment imposes. Moreover, he has sought an expeditious trial, and the government's recent revelations of its own misconduct put him squarely between the proverbial rock and a hard place. He can request to proceed to trial as scheduled (but with an indictment procured by misconduct), or he can accept a delay that he does not want but that may allow the government to get what it has wanted for tactical reasons—a joint trial with the lead defendant Anosh Ahmed present and all of the accompanying prejudicial evidence relating to him. He has litigated his concerns with the indictment already, handicapped by not knowing how the evidence was presented or the weight of the evidence. The Court and the defense accepted the government's representations on those matters. Now, a new indictment will require the re-litigation of severance issues, the motion to dismiss Count 19, and a variety of other work resulting solely from the government's conduct. This is real prejudice that a superseding indictment cannot undo, but which might have been mitigated by earlier notice to the Court and the defense of the misconduct in the grand jury – a step only the U.S. Attorney's Office could have taken.

But there is another basis for dismissal with prejudice. Often overlooked is that *Bank of Nova Scotia* left open an avenue for dismissal with prejudice; that is, a history of repeated prosecutorial misconduct. "Finally, we note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment." *Id*. at 259, fn 9. Multiple cases, post-dating *Bank of Nova Scotia* recognize this as a possible basis for dismissal. *See, e.g., United States v. Smith*, 2022 WL 1053263 at *1 (S.D.N.Y. 2022) (citing *United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021) rev'd on other grounds) ("This Court may dismiss an indictment for prosecutorial misconduct as "an extraordinary remedy ... pursuant to [its] supervisory power ... if the grand jury was misled or misinformed, or possibly if there is a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process."); *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990); *United States v. Felton*, 755 F.Supp. 72, 74 (S.D.N.Y. 1991); *But cf. United States v. Walters*, 910 F.3d 11 (2d Cir. 2018).

Although dismissal with prejudice is rare, federal appellate courts have affirmed it as a sanction for prosecutorial misconduct in a range of contexts where the misconduct caused harm that no lesser remedy could undo. *See United States v. Chapman*, 524 F.3d 1073, 1085–87 (9th Cir. 2008) (affirming dismissal with prejudice as a

22

sanction for "flagrant" prosecutorial misconduct involving the suppression of more than 650 pages of *Brady* and *Giglio* material); *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) (affirming dismissal with prejudice where the government's "reckless disregard" of its *Brady* obligations and the prejudice the defendants would suffer on retrial warranted "the extreme measure of dismissing the Indictment"); *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) (affirming dismissal with prejudice of indictment against thirteen defendants where the government's interference with defendants' Sixth Amendment right to counsel was such that "no other remedy would return defendants to the status quo ante").

Here, what is already known is that there is a history of prosecutorial misconduct in the grand jury spanning multiple cases. The defense has requested the production of documents and communications, as well as an evidentiary hearing. Those documents and that hearing may well reveal additional cases of misconduct in the grand jury, calling into substantial and serious question the fundamental fairness of the grand jury process in this district.

### D.  The Misconduct May Be Part of a Pattern in This District and With AUSA A in Particular.

It is already known that AUSA A committed misconduct in at least two cases. It is not known, how many others remain. But, this pattern of abuse is especially pronounced. The misconduct in the Broadview Six case (*Rabbitt*) was found by the court to include improper vouching, dismissing dissenting grand jurors, and conducting ex

23

parte communications with grand jurors — the same genre of misconduct that now permeates this case. (Att. A, pp. 22–23.) And the misconduct in the Loretto Hospital case (Ahmed I), which was also conducted by AUSA A before a different grand jury, is the subject of a separate review by the U.S. Attorney's Office, according to the May 22, 2026, disclosure. Moreover, the grand jurors in this case were the same grand jurors who heard the Broadview Six matter. See Fed. R. Crim. P. 6(e)(1), Advisory Committee Notes to 1979 Amendments (warning of the "rapport — a dependency relationship" that can develop "between a grand jury and the prosecutor with whom the jury is closeted").

Equally important, it is known that other AUSAs were present for portions of AUSA A's misconduct. What is not known is whether the US Attorney's Office was on notice of a pattern of misconduct related to this particular AUSA before and during her repeated violations. At the very least, the U.S. Attorney's Office for the Northern District of Illinois was on notice as to AUSA A when the U.S. Attorney himself learned of AUSA A's misconduct in the Broadview Six case on April 29, 2026 — at the time the government indicated it would supersede the felony charges in that case. See https://chicago.suntimes.com/crime/2026/05/22/broadview-six-federal-prosecutors-misconduct-tainted-cases-reviewed; 25 CR 693 (Dkt. 139). Yet for at least four weeks thereafter, the government in this case said nothing, made no disclosure, and continued to litigate as though the indictment were untainted. Only after Judge Perry made her

24

findings on May 21, 2026, and ordered unsealing, did the government — on May 22, 2026 — meet with undersigned counsel to acknowledge that AUSA A had committed the same genre of misconduct in this case.

Judge Perry framed the issue in terms that apply with equal force here: "If I had to guess based on my reading of the transcripts, which at this moment I do, there were other people in the office who knew of problems occurring before the grand jury, because they were corrected at various points. So, for example, in the third hearing, no one gets kicked out. And I think that's the one where your indictment was ultimately returned. So my guess, although there will be time to sort through these issues, is that somebody at some point weighed in and said, you aren't allowed to do that." (Att. A, p. 29.) The same observation applies to the present case: the grand jury transcripts in this case reveal that another AUSA was in the room for portions of the misconduct without intervening, and that the misconduct continued for months unchecked.

In addition, undersigned counsel is aware of several defendants in the Northern District of Illinois who have come forward with serious allegations of prosecutorial misconduct in the grand jury.[5] *See, e.g., United States v. Filer*, No. 19 CR 565 (N.D. Ill.) (Dkts. 336, 354, 372) (J.Seeger) (motion, supplemental brief, and reply briefing detailed pattern of prosecutorial vouching, unsworn testimony, and improper use of grand jury

---

[5] Defense counsel has been working diligently to get this motion on file as quickly as possible given the short trial date. Given additional time, defense counsel could return a more fulsome survey of the recent challenges to proper grand jury conduct on behalf of the Northern District of Illinois Assistant United States Attorneys.

as trial preparation tool); *United States v. Colucci*, No. 22 CR 269 (N.D. Ill.) (J.Pacold) (motion concerning grand jury misconduct). This case and the recent record of cases in the Northern District of Illinois contradicts what the defense in *Filer*, and indeed what likely most defendants and judges wrongly believed: that "[f]ortunately, these principles are rarely violated, particularly in this District. Unfortunately, this case is the rare exception." *Filer*, No. 19 CR 565, Dkt. 342 at 8. Unfortunately, such sentiments are no longer necessarily true in this district.

Where misconduct is institutional and continuous — not the inadvertent slip of a single prosecutor in a single proceeding — only dismissal with prejudice will deter recurrence. *United States v. Pinto*, 708 F.2d 523, 530 (10th Cir. 1983); *Bundy*, 968 F.3d at 1023; *Serubo*, 604 F.2d at 817–18. A "sanction" that the government has effectively imposed on itself — dismissal of the original indictment, followed by a planned superseding indictment with no further consequence — is no sanction at all. Without a court-imposed consequence, the message to the U.S. Attorney's Office, and to future grand jury proceedings, is that the worst-case outcome of pervasive misconduct is a do-over.

### E. The Government's Anticipated Superseding Indictment Does Not Cure the Misconduct or Mitigate the Prejudice.

The government's view is undoubtedly that a superseding indictment removes the taint of the prior misconduct. Not so. In this case, the superseding indictment is simply a continuation of the prior misconduct and an effort to conceal it. Furthermore,

26

it preserves the prior misconduct without consequence. And finally, the government's efforts come at a great cost to the defendant — who has already been indicted, arrested, restrained, and put through a year of preparation for trial.

A superseding indictment does nothing to undo the prejudice Khan has already suffered. "[T]he handing up of an indictment will often have a devastating personal and professional impact that a later dismissal or acquittal can never undo." Serubo, 604 F.2d at 817. Khan's arrest, his release conditions, his reputational injury, his trial preparation expenditures, and his lost time are all sunk costs of the tainted first indictment. The government cannot now re-present and pretend none of those costs was incurred.

Just as importantly, the planned superseding indictment will be presented to a different grand jury — but the government will likely just read witness testimony obtained from the tainted proceedings into the record. However, some of the witness testimony inherits issues with the evidence that was crafted by AUSA A when conducting the examination of the witnesses. For example, AUSA A at multiple points stated to the grand jury that Ahmed did not have testing sites while full well knowing that Khan and Chaudhry were extensively involved in the day to day running of COVID-19 testing sites in conjunction with the City of Houston during early 2022. As well, AUSA A failed to accurately represent the evidence through colloquy or in the presentation of the evidence with respect to Khan's knowledge of what was billed and what was appropriate to bill regarding at home test kits that were hand delivered or

27

mailed – work that is substantiated with significant evidence. The government cannot launder a tainted indictment by re-presenting the same case to a new grand jury with a clean coat of paint and with grand jury statements prepared by AUSA A.[6]

The point is sharpened by the defense's prior representations to the Court about Khan's connection to the OCL portion of the alleged scheme. Defendants have been aggressively litigating the fact that Khan was not part of the OCL scheme and have requested severance as a result. The government continually stood by its indictment and proffered to the Court on numerous occasions that there was sufficient evidence connecting Khan and Chaudhry to the earlier OCL scheme. The grand jury transcripts have not produced any such support. In one instance, AUSA A actually told the grand jurors: ███████████████████████████████████████████████ ██████ (Tr. 6/12/25, p. 37.) That admission is hard to reconcile with what the government has been representing in court. Why would the grand jury have indicted Khan on the OCL counts on a record like that? The answer is the misconduct cataloged in Attachment B: the prosecutor's vouching, the foregone-conclusion framing, the ████ ██████ misstatement of conspiracy and aiding-and-abetting standards, and the mischaracterization of Khan's knowledge regarding miscoding of COVID-19 take home tests. A superseding indictment cannot cure those defects; it can only paper over them.

---

[6] Undersigned counsel has requested all the exhibits presented to the grand jury so that we can review the exhibits presented to the grand jury as well.

28

Government misconduct or corruption in the system must be rectified when the conduct prejudices the defendant. In other words, the individual must not be made to suffer when the government has unclean hands. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (dismissal is warranted where prosecutorial misconduct "substantially influenced the grand jury's decision to indict" or there is "grave doubt that the decision to indict was free from the substantial influence of such violations").

## III.  Dismissal of the Indictment Does Not Produce a Windfall for Khan.

In considering this request, the Court may be concerned that dismissing the indictment with prejudice would produce a windfall for Khan. It would not. The case against Khan has been troubling from the beginning. The allegations in the indictment revolve primarily around two individuals: Anosh Ahmed and Mohamed Siraj. The OCL allegations, in particular, rest on a theory connecting Khan to a scheme that the grand jury record itself struggles to support. As noted above, AUSA A herself acknowledged to the grand jury that ██████████████████████████████ ████████████████ (Tr. 6/12/25, p. 37.) Yet the same indictment names Khan on the OCL counts. The motions for severance and motions to dismiss count 19 would need to be relitigated now, based upon the revealed grand jury evidence (and lack of evidence), at great expense, time and continued stress to Khan. Moreover, as reflected in the grand jury transcripts, some of the government witnesses received millions for their efforts related to the Anosh operation; Khan and Chaudhry are not in that class. The

29

underlying evidence fairly supports (including some of the evidence presented to the grand jury) that Khan and Chaudhry were low level operators in the Anosh organization, that they performed legitimate work for an COVID-19 operation, that they had no knowledge of, nor any reason to have any knowledge of appropriate billing codes for the work that was to be done, or any reason to do know that appropriate billing codes were not used, and that neither received profits for their work.

Dismissal with prejudice in these circumstances is not a windfall — it is the proportionate consequence of pervasive grand jury misconduct that produced an indictment the government itself now seeks to abandon and replace. The doctrine reserves dismissal with prejudice for cases of "widespread or continuous" misconduct, *Pinto*, 708 F.2d at 530, and where "no lesser remedial action is available," *Bundy*, 968 F.3d at 1023. This is such a case. The government's own decisions — to commit misconduct in the first place, to conceal it from defense counsel for months, to redact the Broadview Six transcripts in an effort to hide it, and to wait until the eve of trial to disclose it — leave no "lesser remedial action" that meaningfully protects either Khan's rights or the integrity of the grand jury process going forward. *Bundy*, 968 F.3d at 1023.

The Court should also bear in mind the deterrent function dismissal performs. "[T]he constant flow of cases to this court involving prosecutorial misconduct before petit juries demonstrates that judicial 'tongue clicking' and adjurations as to the 'better practice' are likely to have little impact on the problem." *Serubo*, 604 F.2d at 818.

30

Anything less than dismissal with prejudice tells the U.S. Attorney's Office that the cost of even pervasive grand jury misconduct is delay — nothing more. And, in this case, it is a delay the government has continually sought from the outset. That is not a sanction. Rather, it ultimately gives the government what it wanted anyway.

## IV. In the Alternative, the Court Should Conduct an Evidentiary Hearing and Order Production of Communications.

To the extent the Court is not prepared on the current record to dismiss the indictment with prejudice, Khan respectfully requests in the alternative that the Court conduct an evidentiary hearing and order the production of internal U.S. Attorney's Office communications relating to AUSA A's misconduct, the office's knowledge of that misconduct, and any efforts to conceal it, and any misconduct detected in other grand jury proceedings in the Northern District of Illinois. The Court has both the supervisory authority and the inherent authority over its docket to conduct that inquiry.

The hearing and production should be directed at the following questions:

(1)  When the U.S. Attorney's Office became aware that AUSA A was the subject of prosecutorial misconduct complaints.

(2)  When the U.S. Attorney's Office became aware of the grand jury issues associated with the Broadview Six case, and the decision-making process that led the office to redact portions of the grand jury transcripts before submitting them to Judge Perry.

31

(3) When the U.S. Attorney's Office determined that it should review and investigate the grand jury transcripts in this case. (The government has represented that the review has been ongoing, yet defense counsel was not informed of it until May 22, 2026.)

(4) Which AUSAs, supervisors, and other office personnel were present, on notice, or consulted with respect to AUSA A's conduct in this case. The grand jury transcripts reveal that at least one other AUSA was present at sessions during which the misconduct occurred. The *Rabbitt* court has observed that "there were other people in the office who knew of problems occurring before the grand jury, because they were corrected at various points" — an observation that applies with equal force here. (Att. A, p. 28:23—29:1)

(5) Whether and how the office responded to misconduct complaints concerning AUSA A in any of the parallel matters (including but not limited to Broadview Six and the Loretto/Ahmed I case), and what supervisory or training measures, if any, were imposed prior to the June 12, 2025 indictment in this case.

(6) All written communications — emails, memoranda, internal review notes, and the like — within the U.S. Attorney's Office concerning AUSA A's conduct in the grand jury proceedings underlying this case, including any communications relating to a review of those proceedings, any

32

communications relating to a planned superseding indictment, and any communications relating to a decision whether or when to disclose the misconduct to defense counsel and the Court.

An evidentiary hearing is the appropriate forum to develop these facts because they cannot be developed from documents alone. The relevant decisions — to redact, to delay disclosure, to commence and conceal a review of this case, and to plan a superseding indictment — were made by office personnel whose testimony defense counsel must be permitted to obtain. The Court should also order production of the enumerated communications in advance of any hearing so that defense counsel can prepare meaningful examination.

## CONCLUSION

Defendant Khan respectfully requests the indictment against him be dismissed, with prejudice, for three reasons: (1) because the grand jury misconduct was pervasive and egregious and appears to be part of a pattern of misconduct that is widespread and continuous, continuing over at least two cases that are now known, (2) as a sanction for AUSA A's misconduct and the United States Attorney's Office's failure to timely disclose that misconduct to the Court and the defense; and (3) because AUSA A's misconduct and the United States Attorney's Office's efforts to cure that misconduct have prejudiced Khan in ways that cannot be cured and for which the government should not obtain an advantage.

33

In the alternative, Khan respectfully requests that the Court order production of the communications described in Section IV above and conduct an evidentiary hearing.

Dated: May 26, 2026                     Respectfully submitted,

s/Patrick Blegen                        s/Gabrielle R. Sansonetti

Patrick Blegen                          Gabrielle R. Sansonetti
BLEGEN & ASSOCIATES                     LEINENWEBER, DAFFADA, & SANSONETTI
53 West Jackson Blvd., Suite 1424       120 N. LaSalle Street, Suite 2000
Chicago, IL 60604                       Chicago, Illinois 60602
Telephone: (312) 957-0100               (773)716-6117
pblegen@blegengarvey.com                gabrielle@ilesq.com

34